BENJAMIN MORDECAI, plaintiff in error, *vs.* JAMES STEWART,
defendant in error.

1. Whenever any Court of competent jurisdiction has possession of a cause
   it will retain it to the exclusion of all other Courts.—HARRIS, J.
2. When a case is pending on the law side of the Superior Court and the
   defendants can, at law, by the provisions of our Code, set up and main-
   tain all the equitable defences which they could on the equity side of
   said Court, they will not be permitted by bill and injunction to with-
   draw the cause from the law side of the Court.—HARRIS, J.
3. S., security for C., having paid nothing for C., has no equity to be sub-
   rogated to the right which C. has to sue for and recover back usurious
   interest paid by C. to M. on transactions different from the one on which
   S. is security.—HARRIS, J.
4. The discovery can be had at law, and is, therefore, no ground for
   equity jurisdiction over this case.—HARRIS, J.
5. The bill showing no equitable defence which can not be made availa-
   ble at law, and showing no good reason for enjoining M. from dismiss-
   ing his suit, the injunction was improperly granted and should be
   dismissed.—HARRIS, J.

WALKER, J., concurring:

1. The jurisdiction of equity in Georgia is not materially altered by the
   Code.   The Court has general equity powers, such as those exercised
   and practiced in England.
2. No suitor is compelled to appear on the equity side of the Court, but
   he may institute his proceedings for an equitable cause of action on
   the common law side of the Court; or a defendant may set up to a pro-
   ceeding at law, any ground of defence, whether it be an intervening
   equity, or a set-off of an equitable nature, or other grounds of defence,
   either legal or equitable, and the Court may allow the jury to find a
   verdict, and a judgment be rendered thereon, so moulded and framed
   to give equitable relief in the case, as verdicts and decrees are ren-
   ered and framed in equity proceedings.

Mordecai *vs.* Stewart.

3. The jurisdictions of Courts of law has been extended so as to embrace equitable causes of action concurrently with Courts of equity.

4. In cases where Courts of law and equity have concurrent jurisdiction, that Court which first obtains jurisdiction will retain it and do complete justice, and give full relief to all the parties in reference to the subject matter of the suit, unless a good reason can be given for the interference of equity in a proceeding commenced at law.

5. If a party attempts to foreclose a mortgage, the mortgagor may set up at law any defence, whether legal or equitable, which he may have against the mortgagee ; or he may, at his option, proceed on the equity side of the Court, to assert any equitable cause of action which he may have, in an independent and separate proceeding. He can not, by bill in equity. enjoin the proceeding at law to foreclose and force the mortgageé to litigate his rights under the mortgage in a Court of equity, unless a good reason can be given therefor.

6. An account is assignable so as to vest the legal title and right of action in the assignee.

7. A plaintiff may dismiss his action in term time or vacation, except where a plea of set-off is filed ; in case such plea is filed, he may not dismiss so as to interfere with such plea, unless by leave of the Court, on sufficient cause shown, and on terms prescribed by the Court.

WARNER, C. J., dissenting :

The jurisdiction of a Court of equity in this State, embraces the same matters of jurisdiction and modes of remedy as was allowed and practiced in England, which have not been destroyed or taken away by the provisions of the Code.

The case of an *equitable* set-off, against a non-resident, which can not be pleaded at law, gives jurisdiction to equity, and the bill should be retained.

Injunction. Decided by Judge VASON. Sumter Superior Court. October Term, 1867.

See Mordecai vs. Stewart, 36th Ga. R., 126. Upon the note there mentioned, Mordecai had sued Stewart, and was also proceeding to foreclose said mortgage. By this Court a new trial had been granted in the matter of foreclosure and the *remittitur* had been entered on the minutes of said Superior Court, and the judgment of this Court was made the judgment of that Court.

On the next day, Mordecai being present, his counsel moved to dismiss both of said actions. Upon consultation of

counsel of both sides, the motion was postponed till next day.

Meanwhile, Stewart, by bill, averred that the trade between Cutts and Mordecai was made in 1863, and for Georgia & Pensacola Railroad bonds at eighty cents in the dollar in Confederate currency, which bonds were then at a discount even in that currency, because the interest on them had not been paid; that he was in no way interested in the purchase; that, only for the accommodation of Cutts, he endorsed said note; that, being ignorant of the forms of commercial paper, he believed he was binding himself only as security for Cutts, and for the same purpose, gave said mortgage on his various town lots in Americus; that Cutts, in 1866, paid Mordecai $15,325.00 in property agreed by him and Mordecai, to be worth that sum in United States currency, and which was worth that sum, and before that, had paid him, say $62,000.00, on account of said transaction, and in Confederate currency. He stated the former proceedings on said rule, exhibiting the record of the bill of exceptions which had been before the Supreme Court. He further averred that he had lately discovered that Mordecai was indebted to Cutts $15,000.00 for usurious interest paid by Cutts to Mordecai in 1858 and 1859, to-wit: $5,000.00 at once, in 1858, and $10,000.00 at once in 1859, both of which were wholly usurious; that, by the results of the war, Cutts had become insolvent; that Cutts had consented to transfer to him said claim against Mordecai for usury; that he had intended pleading this as set-off, etc., but before the judgment of the Supreme Court was made the judgment of the Superior Court, Mordecai moved to dismiss his causes in order to sue in the United States District Court; that Mordecai resides in South Carolina, and has no property in Georgia; that he (Stewart) is old and infirm; that he had, at great expense and trouble, prepared to defend his causes in the Superior Court, and such change of the forum will be vexatious and unnecessarily expensive to him; that, by scaling said note according to its true value and then applying said usury towards discharging the same, it will be paid off, or at any rate, nearly paid off.

Mordecai *vs.* Stewart.

He averred that he feared that Mordecai might, if allowed to quit this forum, not sue at all for the present, but keep said mortgage, which was a sealed instrument, until the means of proving the foregoing facts would be lost, and that, while it remained open it was a cloud upon his (Stewart's,) title to the mortgaged property. For these reasons, he prayed that Mordecai should be enjoined from dismissing said causes.

Judge Vason granted an order staying the proceedings *in statu quo,* and ordering Mordecai's counsel to show cause why injunction as prayed for, should not issue.

Next morning, to-wit: on the 16th of October, when Mordecai's counsel again called up their motion to dismiss, they were stopped by said order. On the same day Stewart filed his plea of set-off for said $15,000.00 usury, praying that Cutts (who was consenting thereto) should have leave to defend against said foreclosure.

Judge Vason fixed a day for the hearing of the rule to show cause. At that time Stewart amended his bill by averring that, in 1856, 1857, 1858, 1859 and 1860, at various times and on various claims (the dates and amounts of which he could only learn by a discovery from Cutts and Mordecai,) Cutts paid Mordecai other large sums of money purely usurious, amounting to, say $10,000.00; that because these claims were not mutual, and because he could not set them forth in a plea, he could not avail himself of those facts at common law, and prayed that Cutts and Mordecai should answer particularly as to each and every of said transactions, and that all usury discovered to have been paid by Cutts to Mordecai should be credited on said note.

The hearing was postponed, and afterwards, on the 5th of November, 1867, the injunction was granted enjoining Mordecai from dismissing his said causes.

Counsel for Mordecai excepted to said order and assign it as error.

(When the case was called in this Court, a motion was made to dismiss so much of the bill of exceptions as related

to the refusal to allow the cases dismissed, because it was not complained of in time.)

NESBITS, COBB & JACKSON, for plaintiff in error, made the following points: The right to dismiss is clear. New Code, sections 3380 and 2848; Cook vs. Walker, *et al.*, 24th Ga. R., 331. The parties being competent witnesses under the act of 1866, discovery was unnecessary; the account for usury was barred by the statute of limitations, and therefore discovery could do no good. Adam's eq. 133; Equity is not antagonistic to law, but ancillary to it, and controlled by fixed rules. New Code: sec. 3016. 1st Story's eq., sec. 14, *et seq.*; 1st Spence eq. juris., 413 to 422; Equity will not interfere where the remedy at law is clear. Pollock vs. Gilbert, 16th Ga. R. 398; Chambliss vs. Taber, 26th Ga. R. 167; Dulin vs. Caldwell & Co., 28th Ga. R., 117, 3 Eq. Leading Cases 167. The charge is the bills are too vague and uncertain and hypothetically stated. Green, Tracy & Co., vs. Ingram *et al.*, 15th Ga. R., 164; Powell vs. Chamberlain, Miller & Co., 22d Ga. R., 123; Equity will not transfer a case from the law side of the Court to the equity side where the subject matter is within the jurisdiction of both Courts; 10th Paige's R., 333; 9th Wheat. R., 532; 17th Ala. R., 672, 3d Hammond's R., 518; Sou. and Mar. Chan., 374; 18th John R., 514; 5th Howard's R., 80; 1st T. and M. R., 238; 10th Peter's R., 497; 1st Barb. Ch. R., 276.

WILLIAM DOUGHERTY, W. HAWKINS and K. McCAY, for defendants in error, furnished no briefs to the Reporter.

HARRIS, J.

The plaintiff, Mordecai, had commenced a suit in the Superior Court of Sumter county, on a note made by Cutts as principal, with Stewart as security, and, at the same time, at law in the same Court, the plaintiff was proceeding to foreclose a mortgage on real property made by Stewart, the security, to further secure the note mentioned, when he thought proper to move, during term time, the discontinuance of both of his suits. After making a motion to that effect, and before

Mordecai *vs.* Stewart.

the Circuit Judge had made any decision thereon, the counsel of Cutts and Stewart alleged their desire to confer with their clients before any final action on the motion made, and it was, accordingly, not pressed by the counsel of Mordecai until the next morning. When called up, the Judge announced that since the motion was made, a bill of injunction had been presented to him by the counsel of Stewart, whereby it was sought to restrain the plaintiff from dismissing his suit, upon allegations of equities, which were cognizable in Chancery, and in which adequate relief could only be given, and that he had sanctioned, temporarily, said injunction. After this sanction the bill was amended by making Cutts a party defendant. A time being fixed to hear the motion then made for the dismissal of the bill and of the suits, they were heard, the Judge refusing to dismiss the bill, and also denying the original motion to dismiss the suits.

A reversal of the rulings of the Judge as stated, is the purpose of the bill of exceptions here.

1. I take it to be a principle universally recognized in both the English and American system of jurisprudence, that whenever any Court of *competent jurisdiction* has possession of a cause, it will be retained by the Court having possession to the exclusion of all other Courts.

2. The granting of the injunction at the instance of Stewart upon such a bill as was filed in this case was, in my opinion, a palpable violation of the rule stated. To withdraw the matters in controversy *at law* to a Court of equity, as the sanction of the injunction in this case did, can be justified on principle only by its being made clearly apparent that the defences of the defendants at law could not be made as fully there as in a Court of equity and adequate relief afforded. This involves, necessarily, an examination into the existing jurisdiction of the Superior Court as a Court of law, and the Superior Court as a Court of equity.

The plaintiff elected to prosecute his rights at law. This is a right given by the Code, and beyond the control of the Judge. Previously to this right of election being conferred if the cause of a plaintiff was of an *equitable* nature, on the

25

*equity* side of the Superior Court, and through the forms and pleadings usual in equity, redress could be had, there was no option; into equity he was compelled to go. This is not so now. He cannot rightfully be controlled under our present system by the will or opinions of the Judge. He may sue at law, and by proper allegations (and which are amendable at his will at all times,) so shape his case as to obtain the same relief or redress as can be had in a Court of equity; the judgment in the case to be moulded and framed as are verdicts and decrees on the *equity* side of our Superior Court.

This being the undoubted right of a plaintiff in Georgia, it follows that a defendant when sued at law, having an equitable defence, has a right to its assertion at law as fully as that given to a plaintiff. Virtually the Code invests the law side of the Court with *concurrent* jurisdiction with the equity side.

The innovation made upon our old system is a great one; it has not taken away any jurisdiction of the equity side of the Superior Court, but it has very largely augmented that of the law side. It appears to me that if the Judges of the Superior Courts shall carry into operation what I believe to be the legislative will, in good faith, uninfluenced by their predilections for the old usages in which they were educated and to which they have become attached by habit, the result will be the determination of all suits at law on equitable principles. The constitution having conferred on the Superior Courts the authority to issue writs of *mandamus, sci. fa.,* prohibition and *all other writs* necessary for carrying its powers fully into effect, nothing it would seem is wanting to give efficiency to the law side of this Court in its remedial justice, clothed as it has been with the concurrent jurisdiction aforesaid. If this view of the great change in our system of jurisprudence be correct—and that it is, I think is beyond the power of any intellect to controvert successfully by sound reasoning—the enquiry then presses on us for solution: What was in the case below to withdraw it from the jurisdiction which had possession of it, and to cause the litigation

Mordecai *vs.* Stewart.

thereafter between the parties to be had in a Court of Equity ?

To the suits at law of Mordecai, all the defences alleged by Stewart, the security, in his bill of injunction, could, I think, beyond the shadow of refutation, have been made fully at law. What were they ? That, in previous transactions between Cutts and Mordecai, Cutts had paid to Mordecai large sums of usurious interest, and that he (Stewart) asked the assistance of a Court of Equity to give him the right to sue for and recover such usurious interest, or to compel the amount of it to be credited by Mordecai on the note in suit.

3. Now the right to sue for and recover back usurious interest paid is, by a special statute of the State, conferred on the debtor who has paid it. I will not stop to discuss the design of this act, evidently originating in considering usury as odious and to be repressed by penalties—or whether what is in the nature of, if not actually a penalty, can be a matter of subrogation, but I will say that surely there can be no equity whatever in subrogating Stewart to the personal privilege given to Cutts to sue for and recover usurious interest paid by Cutts in other and long passed transactions and with which Stewart had not the slightest connexion—*especially when, for Cutts, his principal, he does not by his bill show that he ever paid a cent.*

The mere fact that he is a security, and liable for Cutts to Mordecai, cannot raise an equity in his favor—nor will these facts together with that of the *insolvency* of Cutts. *Actual loss* is necessary, *and to the extent of such actual* (not apprehended) *loss* only, can a Court of Equity subrogate him as security to the statutory right of Cutts to recover back the usurious interest paid. If right in the principle stated, what other demonstration is needed to prove that Stewart's bill, as to this matter, furnished no ground whatever for the interference of a Court of Equity.

4. Nor did the discovery sought furnish a proper ground for its interposition—as it is undeniable that as full a discovery can be had *now at law* in Georgia, upon interrogatories or an examination of the parties on the witness stand

as by any answer to a bill for discovery.  As little ground, as by the others, is furnished by the allegation in the bill that the mortgage held over the town property of Stewart in Americus clouds his title and prevents its sale at its value. Before there can be an equity in Stewart to have that cloud removed, it must appear plainly that the mortgage debt has been extinguished by payments.  Putting together the usurious interest alleged to have been paid by Cutts, and the credit on the note passed upon by this tribunal in June, 1867, combined, *they will not extinguish the note* held by Mordecai, and consequently the mortgage given by Stewart *remains to satisfy the balance due on the note,* and no Court of Equity can treat it as a cloud, and order it, as such, to be surrendered. But admitting, for argument sake only, that the claims of Mordecai should be reduced, as sought by the bill, the question recurs, why go into a Court of Equity to have this made, when the Court of law in which Mordecai's suits are pending has ample jurisdiction to afford to Stewart all the relief he is entitled to?  Although I have presented the views I entertain pretty fully, I do not feel that I ought to close without illustrating the position maintained by a decision made by this Court, Dec. Term, 1867.  See 35th vol. p. 88; the case of Jackson vs. Deese, *et. al. ;* the judgment was that of a full bench; the opinion referred to was delivered by Chief Justice Lumpkin.  The case was that of an application by petition at law by a partner for a partition of mill property and land; the partnership, by agreement, was limited to the period of five years; it had not expired by its terms; it had not been dissolved by consent; the mill houses had been burned by Sherman's army; some of the copartners were opposed to a dissolution and sought to compel applicant for partition to come up and contribute to rebuilding the mill houses and carrying out the articles of partnership.

The Judge below refused to consider the application, holding that as the partnership was not dissolved and that as matters of partnership were exclusively of equity cognizance, the matters involved could only be disposed of in that

Mordecai *vs.* Stewart.

Court. This Court reversed the judgment, reinstated the application, and instructed the Judge to appoint commissioners to make partition, by sale of the entire mill property, who should call before them the partners, hear testimony as to the state of the accounts between them as to the partnership property and report the facts collected back to the Court, together with the proceeds of the sale, so that, should objection be made by any one of the partners to the correctness of such report, a jury should be forthwith empanelled, to which the report, and all matters involved in the partnership should be submitted, and that the jury should be instructed by their verdict to assign to each partner such share of the money brought into Court from such sale as he was equitably entitled to; and further, that they should find, upon the facts, that such partnership be entirely dissolved, and that the judgment upon such finding should be so moulded as to cover the whole partnership business.

What more could have been done in a Court of Equity ? That this could not have been done at law *before* the Code, is the opinion of the profession generally. The parties would have first been compelled to have gone into equity, procured a dissolution of the partnership, had the accounts among themselves scrutinized and adjusted, then a decree for the sale of the property in order to make a partition. *But it is not so now.* " *And it will require time for the profession to wake up so as to comprehend the full meaning of the Code, its length, breadth, height and depth.*"

A new era in our State jurisprudence began with the operation of the Code. It will be a fatal mistake to adhere to the routine and forms in which we have been educated.

I am sensible they will be abandoned with reluctance, but it is to be hoped, as it involves no matter of *will* on the part of the Bench, that it will conform fully and cheerfully to legislative enactment, especially when within the range of its constitutional powers, as this great change unquestionably is.

5. That, on the part of the defendants below, there is a strong desire to retain the pending litigation in the county in which it was begun, is evident from the averments of the bill

of Stewart, and reasons assigned for his prayer to restrain plaintiff from dismissing his suit.   They cannot have the slightest right in the judgment we are called on to make; nor are we permitted to consider the fears entertained by plaintiff, arising, as has been alleged by his counsel, from the popularity of the counsel of defendants and that of the gallant soldier, the principal debtor, as also the sympathy felt by his county men for the security, who is an aged and estimable citizen, or the other causes assigned why the plaintiff would *now* prefer another tribunal and vicinage for the enforcement of his rights.   We cannot look to the motives which led to plaintiff's motion to dismiss.   The sole enquiry must be as to *his right to discontinue.*   By section 3399, Irwin's Code, a plaintiff *may* dismiss his action in term or vacation. This general right to all suitors is abridged in a few particular cases.

A suit may not be dismissed *after a plea of set-off is filed so as to interfere with the plea,* without leave of the Court.   See section 2856.

The record shows that after the motion was made to dismiss, and during the same day, a plea which the defendants called a set-off, was filed.   Had that plea shown on its face the existence of a mutual demand, or, perhaps, an equitable defence, as a right to an equitable set-off in the security, with sufficient certainty, then the plaintiff could not, of right, have dismissed his suits, so as to interfere with that plea, without leave of the Court and upon terms imposed by the Court.

If the plea had been one of set-off of sufficient certainty in its frame, it would, by law, have accomplished what the injunction was sought for, to restrain plaintiff's right to dismiss.   If it was insufficient, surely a bill, whose equity was founded on that plea, cannot accomplish the restraint sought without the violation of that maxim that " *equity follows the law.*"   If the plea was insufficient, the result is necessarily a judgment that the injunction was improvidently granted.

If the plea had been sufficient, the injunction was improperly granted.   There is no escape from this dilemma, for the plain reason that the Court of law had possession of the cases

and ample jurisdiction.   A majority of this Court concurring, it is ordered that the injunction be dismissed.

Judgment reversed.

WALKER, J., concurring:

Until the adoption of the constitution of 1861, I think a Court of Equity is not, in express terms, mentioned in our fundamental law.

1. " The constitution does not provide for the exercise of any equity jurisdiction whatever.   *   *   The constitution declares that the judicial powers of this State shall be vested in a Superior Court and in such inferior jurisdictions as the legislature shall, from time to time, ordain and establish.   * * *   The term 'judicial powers,' embraces all cases, criminal and civil, at common law and in equity, and the legislature, in regulating them, were authorized to make any arrangement of them not repugnant to the constitution.   In the exercise of this power they vested jurisdiction in equity cases in the Superior Courts.   *   *   The equity jurisdiction was created by the act of 1799.   (Cobb's N. D. 467; sec. 53 of the Judiciary Act.)   It was a special grant, and gave an exclusive jurisdiction.   It authorized the Superior Courts to 'exercise the powers of a Court of Equity' by such proceedings as were 'usual in such cases.' "   Gilbert vs. Thomas, 3 Ga. R., 579 and 580.   In Beall vs. ex. of Fox, 4 Ga. R., 404, it is decided that " the Superior Courts in this State are empowered to exercise general equity jurisdiction, in all cases where a common law remedy is not adequate."   In delivering the opinion of the Court, p. 423 and 424, Judge Warner says, " When we take into consideration the contemporaneous construction which has been given to it (the 53d section of the Judiciary Act,) in favor of such general equity jurisdiction, in all cases where common law remedy was not adequate by our Courts, for a period of nearly fifty years, without any attempt, on the part of the legislature, to restrict its exercise, we can not now consider it as an open question."   Now, the Revised Code, section 3045, says, " Generally, equity jurisprudence embraces the same matters of jurisdiction and modes

of remedy in Georgia as was allowed and practiced in England." There need be no doubt then, as to what equity jurisdiction in Georgia now is, except in ascertaining what was allowed and practiced by the Courts of Chancery in England. In 1820, (Cobb's Dig. 463 and 464,) the legislature passed an act declaratory of the meaning of this 53d section, which section specifically enumerates as grounds of equity jurisdiction : First, To compel parties to discover, on oath, all points necessary to the investigation of truth. Second, To discover transactions between copartners and co-executors. Third, To compel distribution of intestate estates, and the payment of legacies. Fourth, To discover fraudulent transactions for the benefit of creditors. After reciting the whole section, and also reciting that, by construction, equity had drawn to itself, exclusively, all cognizance of the cases enumerated even when they might depend on *aliunde* proof " to the manifest embarrassment of justice in many cases, to the injury of the good citizens of this State ; for remedy whereof, *Be it enacted* that from and after the passage of this act, whenever in any of the cases enumerated in the before recited section, a plaintiff or complainant shall conceive that he, she, or they can establish his, her, or their claim, without resorting to the conscience of the defendant, it shall and may be lawful for every such plaintiff or complainant to institute his, her, or their action upon the common law side of the Court, and shall not be held to proceed with the forms of equity ; any law or usage to the contrary notwithstanding." Section 2d provided for the filing of a bill of discovery, after the commencement of the common law action in aid or defence thereof in all cases where it might be necessary. Let it be borne in mind that it was by virtue of a construction of this 53d section that the Court of Equity assumed general equity powers ; and then the act of 1820 says that in any of the cases enumerated in that section the plaintiff or complainant may, if he shall conceive that he can establish his claim without resorting to the conscience of the defendant, institute his action at law, and shall not be held to proceed with the *forms* of equity ; and we have a remedy at law for any equitable cause of action

whatever, provided the plaintiff conceives he can prove his case without resort to the conscience of the defendant.

If, after the institution of his action at law, he wished to have the testimony of his adversary in aid or defence of his common law action, he could file a bill for the discovery of testimony. The act of 1847, Cobb's Dig. 465, authorized parties to compel discoveries at common law. If the act of 1820 had received that liberality of construction to give Courts of law jurisdiction of equitable causes of action, which the 53d section received, in order to give the Courts of Equity jurisdiction of causes of a general nature, there never would have been much necessity for going into a Court of Equity at all. We would not have witnessed the anomaly of a Judge of the Superior Court permitting a judgment to go against a party to-day, and to-morrow as chancellor enjoining it, and after this, submit the case to be tried by another jury, selected in the same manner as the previous one presided over by the same Judge; and in direct violation of the act of 1820, hold the party "to proceed with the *forms* of equity." By reading the opinion in the case of the Justices, etc., vs. Hemphill, 9 Ga. Rep., 65, it will be seen how reluctant our Courts then were to give effect to this act. In Cook vs. Walker, 15 Ga. Rep., 473, Judge Lumpkin, after giving a very interesting history of equity jurisdiction in Georgia, says: "The act of 1820 complains that equity had drawn to itself *exclusive* jurisdiction of the five sorts of cases therein mentioned; and confers *concurrent* common law jurisdiction."

2. Thus stood the law at the adoption of the Code. By sec. 3026 of the Revised Code, "Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong, or relieving for injuries done. Sec. 3027. No suitor, however, is compelled to appear on the equity side of the Court; but he may institute his proceeding for an equitable cause of action upon the common law side of the Court *at his option,* and the Court may allow the jury to

find a verdict, and a judgment be rendered thereon, so moulded and framed to give equitable relief in the case, as verdicts and decrees are framed in equity proceedings." To my mind this is clear, and gives a party a right, in any "equitable cause of action," to proceed in equity or common law, "at his option."

3. It does not take away, or at all interfere with the equity jurisdiction, as specified in sec. 3045, but extends the jurisdiction of a court of law so as to embrace equitable causes of action; in other words to permit the party moving to elect whether he will "proceed with the forms of equity" or not.

4. Once a party elects his forum he will be bound by such election, for where law and equity have concurrent jurisdiction, the Court first taking will retain it unless a good reason can be given for the interference of equity, Rev. Code, 3041. It follows, from what has been said, that a party may institute his proceeding at common law for any cause of action, whether legal or equitable, and have such relief as the facts of his case may show him to be entitled; and on the other hand a defendant may set up, to any proceeding instituted against him at law, any ground of defence which he may have, whether legal or equitable, to resist a recovery by the plaintiff. If he have a set-off of an equitable nature, or any other intervening equity, not reached by the principle of the common law, he may set this up as a defence to a common law proceeding and have full, complete and adequate relief, in relation to his claim, of whatever character it may be.

I am aware that what is here said does not seem to harmonize with the decision in the case of Dudley vs. Love, decided at December term, 1866. In that case no question was made as to the powers of a Court of Equity, and the Court admitted that an additional allegation would have entitled the party to an injunction. The question of jurisdiction was not raised in that case; the question there decided, was as to diligence, etc., nothing more. Hence, what is said there should be understood in reference to the question

as there presented for adjudication.   The same may be said of other cases decided by this Court.

5. In the case at bar, Mordecai commenced his proceedings at law; he had a right to do so; and having gone into that forum, the defendant has no right to oust that tribunal of jurisdiction over Mordecai's case, in order that Stewart may have his equitable set-off adjudicated with it.   Stewart has an equitable cause of action, and in relation to that he can select his forum.   He may, as he has done, proceed in a Court of Equity, and have his rights adjudicated ; or he may, as a defense to the case of Mordecai against him, set up this equitable cause of action, and have the merits of the whole controversy on both sides passed upon in this case, at his option.   He shows no sufficient reason for taking Mordecai's case into equity ; but he does show a good case for equity in his own favor against Mordecai.   Such being the case, he was not entitled to an injunction to restrain Mordecai from proceeding with his common law action, nor was Mordecai entitled to have Stewart's bill dismissed, because it states a good equitable cause of action, and if true entitles Stewart to a decree against Mordecai.   Stewart has a right to proceed to trial on his bill, and Mordecai, being relieved of the injunction, may proceed with his common law proceeding.   It may be that Stewart may dismiss his bill and set up the matters therein alleged as a defense to Mordecai's suit.

6. I have no doubt that if Cutts assigned to Stewart this claim for usury before Mordecai sued Stewart, that it would be good as a set-off at law, without reference to the sections of the Code already cited.   By sec. 2218, Rev. Code, " All choses in action arising on contract may be assigned so as to vest the *title* in the assignee."   Chitty defines *choses in action* to be "rights to receive or recover a debt, or money, or damages for breach of contract, or for a *tort* connected with contract, but which cannot be enforced without action." 1 Ch. Pr. 99.   A right to recover a debt, or damages for breach of contract, may be assigned so as to vest the title in the assignee; and the person in whom is the title or legal interest has a right to sue for the recovery thereof.   1 Ch. Pl.

p. 2. This claim of Stewart by assignment from Cutts was a legal claim, the subject of set-off according to the principles of the common law, and may be set-off against Mordecai's claim on Stewart. Nor have I any doubt that Cutts, under the circumstances alleged in the bill, could intervene for the protection of Stewart, and insist on having the amount of this usurious interest applied towards the extinction of the liability of this accommodation maker, who was really a surety; provided, of course, that the claim had not been so assigned as to make it a valid legal set-off.

7. Stewart filed a plea of set-off to Mordecai's action against him; this placed it out of the plaintiff's power to dismiss his action so as to interfere with that plea, unless by leave of the Court, on sufficient cause shown, and on terms prescribed by the Court. Rev. Code, sec. 2856. Therefore the plaintiff had no right to dismiss his action of his own mere motion but must apply to the Court for that purpose, if he wish to dismiss, and the Court will doubtless prescribe such terms as will meet the justice of the case, and protect the rights of both parties.

The conclusion at which I arrive is that the Court erred in not dissolving the injunction, and his judgment holding it up should be reversed; that Stewart may continue to press his bill to trial if he wish to do so, or he may dismiss that proceeding and set up his equitable set-off against the plaintiff's demand at law; and that Mordecai can not dismiss his case so as to interfere with Stewart's plea of set-off unless by leave of the Court on sufficient cause shown and on terms prescribed by the Court, whose duty it is to see that justice is done to both sides.

Judgment reversed.

WARNER, C. J., dissenting:

In this case, I cannot concur with my brethren in the judgment which they have rendered. They differ in their reasons for the judgment, but concur in the general result thereof.

This is a bill filed by Stewart against Mordecai and Cutts, seeking to enjoin Mordecai from foreclosing his mortgage

upon Stewart's property, with a prayer for equitable relief, in accordance with the facts stated therein. The facts alleged are, in substance, that Stewart, the complainant, became the *security* for Cutts to Mordecai, for a large sum of money, and as such security, mortgaged his property to Mordecai to secure the payment of the debt; that Cutts, his principal debtor, is entirely *insolvent*; that Mordecai, the principal, is indebted to Cutts, his insolvent principal, a large sum of money, for usurious interest paid him, which, under the laws of this State, Mordecai is bound to pay back and refund to him ; that Mordecai, the creditor, who is proceeding to collect the debt of Cutts out of Stewart, his security, by the foreclosure of his mortgage upon the property of the latter, *resides out of the State*, and the prayer of the bill is, that Mordecai may discover what amount of money he is indebted to Cutts for usurious interest paid by Cutts to him, and that the amount of money so found to be due by Mordecai to Cutts, may be credited on the debt due by Cutts to Mordecai, for which Stewart is only the security. The complainant Stewart, insists, that inasmuch as he is only the *security* to Mordecai for the payment of Cutts' debt to him, and the latter being entirely insolvent, he is *equitably* entitled to have the amount due by Mordecai to Cutts, credited on the debt due by Cutts to Mordecai for the payment of which he is bound as security, and thereby relieve his property to *that extent*. What justice or equity is there in compelling Stewart, as the security of Cutts, to pay the full amount of Cutts' debt to Mordecai, when upon a fair settlement and account between Mordecai and Cutts, one-half of it may be extinguished and paid off? If Stewart has the debt to pay as security for Cutts, he has no remedy to reimburse himself out of his *insolvent* principal, and therefore his equity to have the amount taken and the credit made *now* before his property is sold for its payment, is manifestly apparent. The bill alleges that there is a debt due by Mordecai to Cutts for usurious interest. Stewart is *interested as the security of Cutts*, in having that debt appropriated, as this Court has held during the present term, in the case of Pope vs. Williams & Solomon (see the authorities cited in that

Mordecai vs. Stewart.

case.) But it is contended that a Court of Equity, under the provisions of the Code, has no jurisdiction to grant the relief prayed for in this case; that the complainant seeks to have an *equitable* set-off allowed him ; that a Court of law can afford him as adequate and complete relief as a Court of Equity ; that a Court of law having first acquired jurisdiction of the case, will retain it, and so *mould* the verdict as to do complete justice between the parties. I am perfectly aware that in these latter days of *progress*, there is a certain class of judicial reformers, so-called, who, not properly comprehending or appreciating the beneficial practical results of the *remedial process of a Court of Equity*, seem anxious to abolish it from the Courts altogether, and to *merge* the common law and equity jurisdiction into a sort of *hermaphrodite* proceeding, so as to *mould* verdicts and decrees in the shortest and most expeditious manner, without any regard whatever, to the *well defined* legal and equitable rights of the parties. This new mode of procedure, it must be admitted, requires *less* professional labor, *less* professional skill and learning, but the rights and equities of the parties cannot be half so well considered or adjusted. This class of judicial reformers, so-called, are like *eunuchs* in a *seraglio*, who, incapable of enjoying the pleasures of the place themselves, are unwilling to see others do so ; hence they are generally in favor of the *hermaphrodite moulding* process, and for abolishing the safe and well established mode of procedure in equity, which the experience of mankind for ages has found to be necessary for the adequate and complete protection of individual rights. But the legislature has not yet, abolished the jurisdiction of Courts of Equity in this State. The 3045th section of the Revised Code, declares that, " General equity jurisprudence embraces the same *matters of jurisprudence and modes of remedy* in Georgia, as was allowed and practiced in England." The jurisdiction, and *remedies*, incident to a Court of Chancery still exist in this State, have not been taken away or destroyed by the Code. Provision has been made for a certain class of cases, so as not to make it necessary for parties to go into a Court of Equity to obtain relief, such as a partial failure of consideration in

the performance of contracts and cases of like character which may be tried in a Court of law, and the verdict so moulded, as to do justice between the parties ; but how a Court of law has ever got jurisdiction of this equitable set-off which Stewart claims in his bill, I have not been able to discover.   The truth is, according to the facts alleged in the bill, a Court of law cannot have jurisdiction of the set-off which he claims ; it is purely an equitable right which he asserts, growing out of the facts of the case, of which a *Court of Equity alone has jurisdiction.*   A set-off, to give a Court of law jurisdiction, must be between the same parties, in their own right.   Revised Code, sections 2849, 2850 and 3413.   Stewart, the complainant, could not plead the set-off in a Court of law against Mordecai upon the foreclosure of the mortgage; he does not pretend to hold the claim in his *own right* against him, and if he had plead it, a Court of law would not allow it.   Tinsly vs. Beall 2d Kelly's R., 134.   How, then, can it be said that a Court of law has ever *acquired jurisdiction* of this set-off alleged in the complainant's bill, for the purpose of *moulding* it, or for any other purpose ?   It is assumed by the majority of the Court, that a Court of law, and a Court of equity have *concurrent* jurisdiction over this question of set-off as *made in this bill.*   That is the proposition which I deny.   But even admitting that a Court of law had jurisdiction, that Stewart had a remedy in the common law Court to enforce this set-off; still, if that remedy was not as *complete* and *effectual* as the equitable relief which he seeks, that would not deprive a Court of Equity of jurisdiction.   Revised Code, section 3040.   The general rule as to set-off, is the same in a Court of Equity as in a Court of law.   The 3084th section of the Revised Code declares that, " As to set-off equity generally follows the law; but if there is an intervening equity, *not reached by the law,* or if the set-off be of an equitable nature, the Courts of equity take jurisdiction to enforce the set-off."   The facts of this bill show an intervening equity not reached or recognized by the Courts of law, the set-off prayed for, growing out of the facts of the case, is of an equitable nature, of which no Court of law has jurisdiction to

enforce, either by the moulding process, or by another process, for the simple reason it has no jurisdiction for that purpose. In my judgment, the complainant is entitled to have his bill retained in Court for the purpose of obtaining the discovery sought, and the relief prayed for, consequent upon that discovery, taking the facts alleged in the bill to be true, and that the judgment of the Court below should be affirmed.