## 33994. MORTON v. GARDNER et al.

HALL, Justice.

This appeal arises out of a libel action filed by Dr. William J. Morton against numerous parties who allegedly defamed his professional character. The defendants were four persons who allegedly had written the Composite State Board of Medical Examiners (of which Dr. Morton is himself a member) either complaining or communicating complaints about Dr. Morton, as well as two reporters, Atlanta Newspapers, Inc., and Cox Enterprises, Inc. The four who wrote the State Board were three other doctors and a former medical assistant of Dr. Morton.[1]

Dr. Morton sought damages for the alleged tort of defaming him to the board, and for the alleged defamation occurring in newspaper articles concerning the investigation of his medical practice. A history of the litigation is presented in a related appeal decided today, *Morton v. Skrine,* 242 Ga. 844, ante (1979).

The defendant doctors filed a counterclaim seeking to enjoin the libel action because Dr. Morton, a member of the State Board, had obtained the complaints and a complete copy of the investigative file regarding his practice from a secretary employed by the board and had furnished the material to his attorney who had used it to prepare the libel action.[2] The defendant doctors alleged

---

[1] The complaint against one of the three doctors was later dismissed when service could not be obtained, apparently because he had moved out of state.

[2] Dr. Morton procured the complete file in March, 1977, after the matter was closed. Prior to that he had procured copies of the letters of complaint.

that Dr. Morton had obtained the copy of his file in violation of Code Ann. § 84-916 (d) which makes such files confidential; Code Ann. § 84-9914, which provides criminal penalties for violation of Chapter 84-9; and Code Ann. § 89-953, which sets forth a Code of Ethics for persons serving on boards such as the Composite State Board of Medical Examiners. They alleged that Dr. Morton and his lawyer had the file for eight months. They further alleged that subsequent to the discovery that Dr. Morton had procured a copy of his file, the State Law Department requested that he return all copies in his or his attorney's possession. Arguing that, in view of the fact that they were unable to secure the file because of its confidentiality, Dr. Morton had obtained an unfair inequitable and irreversible advantage, the defendant doctors sought to enjoin the libel action against them.

In an effort which would have mooted the counterclaim, Dr. Morton filed a mandamus action in Fulton County seeking to obtain from the board a copy of his file. The reporters and the publishing company intervened, seeking the same rights of access as Dr. Morton. In *Morton v. Skrine,* supra, this court has ruled that Code Ann. § 84-916 (d) forbade Dr. Morton and the intervenors access to the file. That decision affirms the trial judge's conclusion in this case to that effect and moots several of Dr. Morton's enumerations of error raised here.

Thus we have the situation that a public official, a member of the board of Medical examiners, obtained a copy of the board's investigation file concerning the official contrary to law, and based at least in part thereon filed a libel suit against the people who complained about him to the board.[3]

The trial court in the libel action held the board's file

---

[3]For example, the libel complaint attaches as one exhibit a photo copy of a handwritten letter from the medical assistant to the board complaining about her former employer.

to be confidential and entered a permanent injunction restraining Dr. Morton from proceeding in the libel action against the counterclaimants. No injunction has been entered concerning the two reporters and their publishers. In entering the injunction in favor of the two doctors the trial judge found, among other things, that "Plaintiff and his attorneys have used the copies of the Composite State Board of Medical Examiners' investigative file in the preparation of the above captioned case and especially in the discovery procedures undertaken"[4]; that "On December 2, 1977, the Plaintiff and his attorney purportedly returned copies of said file to the Composite State Board of Medical Examiners"; that "Despite the purported return of the file, or parts thereof, the information contained in said file and the leads possibly obtainable therefrom cannot be erased from the minds of Plaintiff and his attorneys"; that "Plaintiff has taken unfair, inequitable and unconscionable advantage of these Defendants, and if he is permitted to continue prosecution of his suit for defamation of character, the Defendants will be deprived of the right of due process of law"; and that "Defendants Gardner and Palen [the counterclaimants], without fault on their part, cannot avail themselves of any remedy at law, and thus because of the intervening equity, the process of this and other courts should be restrained."

The trial judge, in his order, stated further: "Let us make general observation as to the conduct of the plaintiff in this case. He was a member of the Composite State Board of Medical Examiners and was under both a sworn and ethical duty to protect the integrity of any investigative reports, and the like. His duty was to protect the privacy of such records, not prostitute it, and particularly for his personal interests. The law not only forbids any part of such records being released for any purpose other than a hearing before the Board, but makes such records immune from court subpoena, which places

---

[4]Plaintiff's interrogatories, as well as his brief to this court, refer to statements given to the State Board's investigators by the defendant doctors.

an impenetrable wall around them both from 'without' and 'within,' except and solely for hearing purposes of the Board. . .

"We frequently have had experiences when very serious felony cases were dismissed because the evidence, though unequivocally [sic] establishing guilt, was obtained by unwarranted methods,—so-called 'fruit of the poison tree.' By the same token, we feel this whole action is 'tainted' by evidence obtained in an unconscionable manner and in violation of both the statutes of Georgia and the obligation of public trust a member of a given governmental board has not to use confidential information obtained by reason of his official position for his own personal benefit.

"This case involves the circumstance of one taking advantage of his position of public trust for his personal advantage which would not have been available to any non-Board medical practitioner, giving him an 'inside' advantage which is abhorrent to anyone's sense of fair play or ethics.

"In this situation, a court of equity, which is a court of good conscience, should intervene to protect defendants against unconscionable acts for which there is otherwise no redress."

We cannot agree with the trial court that equity requires that Dr. Morton's libel suit be enjoined. Even assuming that Dr. Morton's conduct relative to the investigative file was felonious, unethical, reprehensible and without good conscience, such acts standing alone do not deprive him of his right (Code Ann. Ch. 105-7) to bring an action for libel. One's rights to seek his legal remedies are not contingent upon his conducting himself like a gentleman. In fact, the right to press one's suit continues to exist even where a malfeasant is seeking equitable relief, if his misconduct "does not form part of the transaction in controversy." McClintock on Equity, § 26, p. 63 (1936). See also 2 Pomeroy's Equity Jurisprudence, § 399 (1941). The so-called misconduct, bad conscience or unclean fault "must relate directly to the transaction concerning which complaint is made." *Atlanta Assn. of Fire Ins. Agents v. McDonald,* 181 Ga. 105 (2) (181 SE 822) (1935). To hold otherwise would be what Wigmore

described, in commenting on the exclusionary rule in criminal cases, as "misguided sentimentality." 8 Wigmore on Evidence, § 2184 (Rev. Ed. 1961).[5]

Dr. Morton's unauthorized use of the file is wholly separate from the issue of libel vel non, and he would not be barred, even if he sought equity.

We turn now to consider the situation of the libel defendants.

"Equity will not enjoin the proceedings and processes of a court of law, unless there shall be some intervening equity or other proper defense of which the party, without fault on his part, cannot avail himself at law." Code Ann. § 55-103. See also Code Ann. § 55-101. Even then it should be interposed cautiously. *Saffold v. Foster,* 75 Ga. 233 (1886). "Courts of equity will not exercise this power to allay mere apprehensions of injury, but only where the injury is imminent and irreparable . . . and there is no adequate remedy at law." *Cathcart Van &c. Co. v. City of Atlanta,* 169 Ga. 791, 793 (151 SE 489) (1930). If the court at law has full power to grant the party all the relief to which he is entitled, there is no ground for the exercise of equity's jurisdiction. *McLarty v. Springfield Life Ins. Co.,* 223 Ga. 707 (157 SE2d 735) (1967); *Alford v. Alford,* 198 Ga. 424 (31 SE2d 785) (1944).

These are the standards against which we should measure the claim for injunction against Dr. Morton's prosecution of his libel suit. Let us look at the likely course of the suit.

What we have ruled in *Morton v. Skrine,* supra, establishes that in the libel action, neither Dr. Morton nor anyone else will be able to introduce into evidence any part of the board's investigative file. This result follows from our ruling that the board's file is absolutely confidential and may be used only by the board in the conduct of its investigation and hearing. Therefore, nothing in the file, of which Dr. Morton may have

---

[5]Though it is not involved here, we note that application of the exclusionary rule in criminal cases merely excludes the illegal evidence and does not prevent the state from prosecuting the defendant.

obtained a copy, may be introduced into evidence.

What remains, then, is a somewhat nebulous advantage Dr. Morton might have obtained because of his recollection of the file contents and possible leads available from it.

The mere fact that a plaintiff in a libel action is in possession of information presently unknown to a defendant which may aid the plaintiff tactically in the prosecution of his suit at law does not amount to a showing that the defendant has an inadequate remedy at law. It has been uniformly held over the years that discovery may be had from the opposite party in any case, legal or equitable, pending in any court. *Walker Electrical Co. v. Walton,* 203 Ga. 246 (46 SE2d 184) (1948); *Arthur Tufts Co. v. DeJarnette Supply Co.,* 158 Ga. 85 (123 SE 16) (1924); *Burress v. Montgomery,* 148 Ga. 548 (97 SE 538) (1918); *Mordecai v. Stewart,* 37 Ga. 364 (1867). This is even more true today since the adoption of the Civil Practice Act. Discovery is available under the CPA to any party in any court regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action; it is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Code Ann. § 81A-126 (b) (1).

Certainly the libel defendants cannot discover the Board's file. Nor may they discover the contents of the file as culled from Dr. Morton's memory. But nothing in *Morton v. Skrine,* supra, prevents them, as defendants in a libel action, from discovering the way plaintiff is seeking to structure and prove his case against them.

We conclude that the libel defendants are fully able to avail themselves of their defenses, and are not the victims of Dr. Morton's "unfair, inequitable and unconscionable advantage."

It follows that the trial court erred in enjoining Dr. Morton from proceeding with his libel action.

*Judgment reversed. All the Justices concur, except Bowles, J., who concurs in the judgment only, and Hill, J., who dissents.*

ARGUED SEPTEMBER 18, 1978 — DECIDED JANUARY 5, 1979 —
REHEARING DENIED JANUARY 23, 1979.

*Nicholson & Meals, Robert N. Meals, A. Lee Parks, Jr., Altman & McGraw, Sol Altman, Carlisle, Chason & McCrae, Edwin Carlisle,* for appellant.

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., Kirbo & Kirbo, Bruce W. Kirbo, Alexander, Vann & Lilly, William U. Norwood, Porter & Lehman, Richard Porter, Malone & Percilla, Del Percilla, Jr.,* for appellees.

Hill, Justice, dissenting.

I agree with the trial judge who found as follows:

"This case involves the circumstance of one taking advantage of his position of public trust for his personal advantage which would not have been available to any non-Board member medical practitioner, giving him an 'inside' advantage which is abhorrent to anyone's sense of fair play or ethics."

"In this situation, a court of equity, which is a court of good conscience, should intervene to protect defendants against unconscionable acts for which there is otherwise no redress."

Code Ann. § 55-101 supports the trial judge's decision and I would affirm.