### 33858. MORTON v. SKRINE et al.
### 33859. STEWART et al. v. MORTON et al.

HALL, Justice.

The primary issue presented on this appeal is the meaning of Code Ann. § 84-916 (d) governing the confidentiality of an investigatory file compiled about a physician's medical practice by a state examining body. Appeal No. 33858 is brought by the physician from an adverse decision in his mandamus action seeking access to the investigatory file. Consolidated with the appeal for decision is another appeal, No. 33859, brought by certain newspaper personnel also involved in the dispute.

#### I. Facts

The instant conflict arose in 1976. After complaints from four persons including three physicians, the State Board of Medical Examiners investigated Dr. William J. Morton (who is himself a member of the board), compiling an investigatory file between August and December of that year. The investigation was conducted pursuant to Code Ann. § 84-916 (d) and was terminated on or about March 9, 1977, by the board's action unanimously exonerating Dr. Morton of all charges, without the necessity for a hearing on the charges.

Dr. Morton subsequently filed a libel action in the Superior Court of Grady County seeking damages for alleged injuries arising out of an article which appeared in the Atlanta Constitution on September 30, 1976, concerning the investigation. Defendants in that action are the persons who complained of his professional

conduct, two newspaper reporters, and the newspaper publishing company. A separate appeal in that action has been filed in this court. *Morton v. Gardner,* 242 Ga. 852, post. The reporters and the publishing company are hereafter referred to as Intervenors.

On January 10, 1978, Dr. Morton brought a mandamus action in Fulton Superior Court against James E. Skrine, as Joint Secretary of the State Examining Boards, and the Composite State Board of Medical Examiners, seeking to compel the board to release to him its investigatory file. Intervenors sought to intervene to obtain access to the file equal to any granted Dr. Morton, and to enjoin his maintaining the libel action. The superior court dismissed Dr. Morton's mandamus suit for failure to state a claim for relief, on the ground that Code § 84-916 (d) as a matter of law prohibited the access he seeks. The order allowed intervention for the purpose of seeking file access, but refused to entertain the claim seeking injunction.

It should be added that although Dr. Morton now seeks to inspect and photograph the board's file, that file was previously in his possession for some eight months. Apparently in his capacity as a board member, Dr. Morton secured a copy of his investigative file from a board secretary. Intervenors allege that he used the information in the file to frame the defamation action against the complainants and the newspaper personnel. Following an opinion of the State Law Department that the file should be returned, Dr. Morton returned it when requested to do so.

Dr. Morton's mandamus action seeking access to the file is bottomed upon the Georgia Open Records Law (Code § 40-2701 et seq.): "All State, county and municipal records, *except those, which* by order of a court of this State or *by law, are prohibited from being open to inspection* by the general public, shall be open for a personal inspection of any citizen of Georgia at a reasonable time and place, and those in charge of such records shall not refuse this privilege to any citizen." (Emphasis supplied.) The ruling of the Fulton Superior Court denying access was based upon this final sentence from Code Ann. § 84-916 (d): "The results of all

investigations whatsoever shall be reported only to the board, and the records of such investigations shall be kept by the board; no part of any such record shall be released for any purpose other than a hearing before the board, nor shall such records be subject to subpoena." The court concluded that this sentence rendered the investigatory file exempt under the italicized language of the Open Records Law because Code § 84-916 (d) was an express "law" prohibiting the inspection of the investigatory file.

We agree with the superior court.

## II. Confidentiality of the File

Dr. Morton argues that § 84-916 (d) merely governs the conduct of the investigators who report to the board, and prohibits their release of information to anyone but the Board, but does not govern the board's release of information. He urges that once an investigative file is closed, its disposition is governed by *Houston v. Rutledge*, 237 Ga. 764 (229 SE2d 624) (1976). *Houston* considered records made by a sheriff, of inmate deaths in the jail. A newspaper requested access to that information and this court established a balancing test in this language: "Statements, memoranda, narrative reports, etc. made and maintained in the course of a pending investigation should not in most instances, in the public interest, be available for inspection by the public. However, once an investigation is concluded and the file closed, either with or without prosecution by the state, such public records in most instances should be available for public inspection. When a controversy of this nature arises between a citizen and a public official, the judiciary has the rather important duty of determining whether inspection or non-inspection of the public records is in the public interest. In short, the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue." 237 Ga. at 765.

Dr. Morton argues that we must remand to the superior court for consideration of both legal and factual issues in order to decide what would serve the public interest in this particular case. He further urges that into his side of the balancing test we must put his position as a member of the board and as the subject of the

investigation, which gives him an especially strong need for access to the file. He says that since his "accusers" have taken their complaints to the newspapers, they have waived their own rights to confidentiality, and he is willing to waive his right to privacy as the subject of the investigation, thus leaving no significant right of privacy to be protected.

Additionally, Dr. Morton advances subsection (h), which provides a qualified privilege for persons reporting or testifying to the Board in such an investigation. He urges that the subsection presupposes that a subject of the investigation must be able to gain access to his file, for otherwise he could not successfully prosecute the informant even for fraud or malice, which are not immunized.

This issue is one of first impression in Georgia. Our conclusion is that subsection (d) of Code Ann. § 84-916 flatly prohibits release of the entire investigative file. This conclusion flows not only from the plain language of that subsection, but also from subsections (e) and (f).

Looking first at (d), the language of the legislature is a clear command: "The results of all investigations whatsoever *shall* be reported only to the board, and the records of such investigations *shall* be kept by the board; no part of any such record *shall* be released for any purpose other than a hearing before the board, nor *shall* such records be subject to subpoena." (Emphasis supplied.) This language is totally inconsistent with Dr. Morton's argument that the board should exercise its discretion on a case-by-case basis to determine what the "public welfare," mentioned in subsection (g), requires as to release of information. Further, we think the phraseology indicates that the legislature desired to immunize the *entire* file. The statute refers to "the result of all investigations whatsoever," "the records of such investigations," "part of any such records," and "such records"—all these are to be confidential. This, we think invalidates Dr. Morton's argument that the various entries in the file should be separately examined for an individual decision on the possible release of each entry.

Our conclusion flows additionally from the fact that what the board is inquiring into (a physician's medical

practice) is a subject involving his patients' right to confidentiality. See Code Ann. § 38-418 (b). The doctor's performance cannot be totally separated from the physical person of the patient, so an investigation must necessarily tread on some very private ground. This fact, among others, shows that the *Houston* case, involving a sheriff's records, is factually distinguishable from the situation presented in an investigation of a physician. The usual doctor-patient confidentiality supports and explains the direction of the legislature that the file not be released for any purpose whatsoever except a "hearing before the board." (Dr. Morton suggests that we might read the word "hearing" broadly enough to encompass the kind of public debate which flows from media publicity of an issue, so that once the newspaper has run the article to which he objects, the file should be released to achieve an even-handed public airing of the subject. The plain words "hearing before the board" manifestly cannot be stretched so far.)

Additionally, the confidential nature of the file is needed to secure and protect a flow of information to the board to enhance the powers to investigate and regulate the practice of medicine.

Looking further at subsections (e) and (f), we find that in the event of a hearing a patient is denied his usual privilege, but "Any testimony or written evidence relating to a patient of a licentiate . . . or to the record of any such patient, shall be received by the board in camera, and shall not be disclosed in [sic] the public." Code Ann. § 84-916 (e). Further, "In any hearing in which the fitness of a licentiate . . . to practice medicine is in question, the board may exclude all persons from its deliberation of the appropriate action to be taken, and may, when in its discretion it deems it necessary, speak to a licentiate . . . in private." Code Ann. § 84-916 (f). These sections reinforce the private nature of the proceeding, and indicate that even the holding of a hearing does not necessarily mean that the investigation will become public. This fact demolishes that part of Dr. Morton's argument which assumes that once a hearing is held the file automatically becomes public or available to the public, and that only the physician who is exonerated

without a hearing is denied access to the file.

We think Dr. Morton's conclusion concerning subsection (h) does not follow, considering the confidentiality which was emphasized in the previous sections, and considering how easily the legislature might have authorized the release of information had it desired to do so.[1]

In support of his arguments Dr. Morton cites State of Florida ex rel. Robert L. Shevin, Attorney General v. Jack Morgan, No. 77-10690, Circuit Court of the 17th Judicial Circuit, Broward County, Florida, concerning Fla. Stat. § 455.08, in which the Florida court allowed access to certain letters of complaint on the ground that they were not part of an investigatory file. We do not agree that the Florida statute is "virtually identical" to Code Ann. § 84-916 (d) and that we should reach the Florida result. The Florida statute says that "Investigative reports and records" such as these are exempt from the Florida Open Records Act *"unless* the Board has found probable cause to commence formal action." (Emphasis supplied.) Our statute expressly prohibits disclosure, without exceptions. As we have noted, even a hearing before the board does not necessarily end the confidentiality of the file. Additionally, the Florida court had access to legislative history indicating the Florida legislature's desire that "records" be narrowly construed. Our statute does not imply that a narrow construction would be appropriate.

We also find distinguishable Toker v. Pollak, 44 N. Y. 2d 211 (376 NE2d 163) (1978), a New York common law decision, reached in the absence of a controlling statute

---

[1]For example, in cases involving disciplinary proceedings against attorneys in this state the requirement of confidentiality ceases upon the determination of probable cause. Rules and Regulations for the Organization and Government of the State Bar of Georgia, November 30, 1976, 238 Ga. 739, 848. Attorney disciplinary rules are established by the Supreme Court of Georgia. Physician disciplinary rules are established by the General Assembly of Georgia.

such as we have in Code § 84-916 (d).

Finally, in Landmark Communications, Inc. v. Commonwealth of Virginia, 435 U. S. 829 (98 SC 1535, 56 LE2d 1) (1978), the United States Supreme Court acknowledged the interests served by confidential communications in investigations analogous to this.

The constitutional attack which Dr. Morton seeks to mount upon the statute was not presented to the trial court and thus will not be considered here. It is true that in his brief to the superior court Dr. Morton mentioned the Constitution in offering a possible statutory interpretation. However, that is not adequate to raise a constitutional question as to the statute's validity.

It follows that the superior court did not err in ruling that as a matter of law Code Ann. § 84-916 (d) forbade Dr. Morton (and the Intervenors) access to the file.

### III. Intervention

Dr. Morton's final enumeration of error complains of the trial court's allowing the intervention by the reporters and the newspaper publishing company. The Georgia statute governing intervention reads as follows: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject-matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, *unless the applicant's interest is adequately represented by existing parties.*" (Emphasis supplied.) Code Ann. § 81A-124 (a). The interest Intervenors claim is a right of access to the board's file equal to that claimed by Morton, on the ground that probably the file contains matter relevant to the issues in the pending libel suit. Dr. Morton asserts that Intervenors' interest in disclosure is adequately protected by him.

It is difficult to see how Dr. Morton could adequately protect Intervenors' interests in file access on these particular facts. Nonetheless, our ruling that access to the file shall not be had by anyone moots the issue: both Dr. Morton and Intervenors have effectively the same right of access, which is no access.

Turning to the appeal in Case No. 33859, Intervenors complain of so much of the superior court's order as denied the portion of their motion to intervene which sought leave to file a cross claim or counterclaim against Dr. Morton based on the fact that his prior unauthorized use of the file gave him such an unfair advantage in the libel suit that he should be enjoined from proceeding with it.

The request was for intervention to allow filing of a cross claim or counterclaim against Dr. Morton. Code Ann. §§ 81A-113 (b), 81A-124 (b). The Intervenors' claim that Dr. Morton's prior use of the file was unauthorized and disadvantageous to them sufficient to justify an injunction was best adjudicated in the then-pending Grady County libel suit in which both Dr. Morton and Intervenors were parties, and in which the claim would be a compulsory counterclaim. The issue whether disadvantage accrued to them was beyond the scope of the instant action which involved whether the file was confidential. See *Morton v. Gardner,* supra.

Consequently, in the conservation of judicial resources and the avoidance of undue delay, the superior court did not abuse its discretion in refusing to allow intervention for purposes of filing the claim in question. *Ryder Truck Rental, Inc., v. Mayo,* 120 Ga. App. 495 (171 SE2d 542) (1969).

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 18, 1978 — DECIDED JANUARY 5, 1979.

*Nicholson & Meals, Robert N. Meals, A. Lee Parks, Jr., Altman & McGraw, Sol Altman, Carlisle, Chason & McCrae, Edwin A. Carlisle,* for appellant (Case No. 33858).

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., John E. Zamer, Arthur K. Bolton, Attorney General, John C. Jones, Staff Assistant Attorney General,* for appellees (Case No. 33858).

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., John E. Zamer,* for appellants (Case No 33859).

*Nicholson & Meals, Robert N. Meals, Altman,*

*McGraw & Loftiss, Sol Altman, Carlisle, Chason & McCrae, Edwin A. Carlisle, Arthur K. Bolton, Attorney General, John C. Jones, Staff Assistant Attorney General,* for appellees (Case No. 33859).