### 20262

George A. BAUER et al., Respondents, v. The STATE of South Carolina et al., Appellants.

(227 S. E. (2d) 195)

*Messrs. Daniel R. McLeod, Atty. Gen., Stephen T. Savitz,* and *Brian P. Gibbes, Asst. Attys. Gen.,* of Columbia, *for Appellants (Excepting Kale in his individual capacity),*

*Charles W. Wofford, Esq.,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for Appellant, Michael G. Kale,* D. C.,

*D. Kenneth Baker, Esq.,* of *Baker & Etheridge,* Darlington, *for Respondents,*

228

*Daniel R. McLeod, Atty. Gen., Stephen T. Savitz* and *Brian P. Gibbes, Asst. Attys. Gen.,* of Columbia, *for Appellants (Excepting Kale in his individual capacity), in Reply.*

*Charles W. Wofford, Esq.,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for Appellant, Michael G. Kale,* D. C., *in Reply.*

July 16, 1976.

*Per Curiam:*

The plaintiffs (who are fifty-eight licensed and practicing chiropractors) brought this action seeking a declaratory judgment clarifying § 56-351, Code of Laws of South Carolina (1962), and requesting an injunction to restrain the defendants from interfering with their practice of chiropractic.

The defendants are Annette M. Young, Judith Ehlich, Michael Kale and H. H. Plemmons, who are sued individually and constituting the South Carolina Board of Chiropractic Examiners (Board); Daniel R. McLeod, as Attorney General, is a defendant by reason of the fact that he is charged with legal representation of the Board.

The gist of the complaint is to charge that the Board and the Attorney General construe Code § 56-351 too narrowly, and threaten and intimidate the plaintiffs in the practice of their profession by attempting to limit their activities. The prayer for relief asks the court to declare their methods, techniques, procedures and equipment lawful in their practice of chiropractic, and to permanently enjoin the defendants from interfering with their methods of operations.

The defendants, in their answer, alleged that the plaintiffs are now, and have for some time, engaged in their practice in violation of § 56-351 and have gone beyond the scope of their professional authority by using machines, equipment and devices, in violation of the statute which defines the limit of chiropractic practice. The answer and counterclaim prays that the complaint be dismissed and requests the court to declare the employment of certain devices unlawful; it also prays that the plaintiffs be enjoined from practicing chiropractic in any manner not expressly authorized by § 56-351, *et seq.*

Our statutory law, as relates to "Chiropractors and Chiropractic," is included in Chapter 6 of Title 56. This chapter

was enacted in 1932 and has remained unchanged. The only section which is of importance in this case is § 56-351, which reads as follows:

"Chiropractic defined.—*'Chiropractic'* is defined to be the science of palpating and adjusting the articulations of the human spinal column *by hand only."* (Emphasis added.)

Other sections of Chapter 6 create the Board of Examiners, provide for promulgation of rules, examination, licensing, revocation of licenses, penalties for violations, etc.

In the lower court, the defendants moved for summary judgment. The matter was heard before the Honorable Robert W. Hayes, who, after taking testimony, denied the motion. Thereafter, the plaintiffs moved for summary judgment before the Honorable Wade S. Weatherford, Jr., on the grounds that the order of Judge Hayes in effect settled all of the issues adversely to the defendants. Judge Weatherford granted the motion, adopting the reasoning of, and incorporating by reference, the order of Judge Hayes as the final disposition of the case. The gravamen of the ruling of the lower court was to hold that chiropractors in this State are permitted to use various items of equipment, machines and devices, some of which are enumerated hereafter, and to hold that they are not limited to the use of "hands only" as referred to in § 56-351, quoted hereinabove. The order of the lower court did not specifically designate the items of equipment, machines and devices which may be used.

The interpretation placed on § 56-351 is found in the following language of the court's order dated December 29, 1975.

"I am therefore of the opinion that the Legislature intended that the phrase 'by hands only' refer back to the words 'palpating and adjusting', so as to limit only those procedures. I find that such term does not prevent the use of other beneficial measures preparatory to and complementary of the chiropractic adjustment, excluding of course

the use of drugs and surgery which have never been within the contemplation of Chiropractic."

The Board and the Attorney General have appealed. It is their contention that the lower court erred in failing to hold that § 56-351 does not permit a chiropractor's use of diagnostic and therapeutic methods or modalities other than those accomplished by the sole use of hands.

Dr. Kale (defendant and board member), individually, has appealed separately. It is his contention that diagnostic, but not therapeutic, modalities are permitted under the statute.

The plaintiffs have filed additional sustaining grounds.

The question which was before the lower court, and which is now before this Court, has been variously stated by counsel:

1. Are chiropractors restricted to the use of their hands only in the practice of their profession?

2. Are chiropractors permitted to use beneficial machines preparatory to and complementary of adjustments, excluding drugs and surgery?

3. What equipment, procedures and techniques may chiropractors utilize in the practice of their profession?

All of these point to and require interpretation of § 56-351, quoted hereinabove. We are not concerned with the merits or demerits of chiropractic treatment. This Court has held that a chiropractor does practice medicine, though in a narrow field. *Williams v. Capital Life & Health Ins. Co.,* 209 S. C. 512, 41 S. E. (2d) 208 (1947); *State v. Barnes,* 119 S. C. 213, 112 S. E. 62 (1922). The question for our determination is purely one of statutory construction. The legislature has the power to license chiropractors, to refuse to license them, and to license them limiting their activities. In previous years, the legislature has provided for the licensing of naturopaths, and at a later date abolished

the practice altogether. The teachings of approved chiropractic schools and the customs, and practices of various chiropractors heretofore, are of little or no concern because the practice of chiropractic is subject to control of the legislature.

A reading of Chapter 6 convinces us that the legislature has not authorized the Chiropractic Board to regulate the practice by determining its scope. The Board's rule-making power, as contained in § 56-353, relates to the right to make rules and regulations for the transaction of the Board's business only. Accordingly, Rule 16, as found in volume 17, page 70 of the 1962 Code, is of no help in our interpretation of the statute.

Even though the statute has remained unchanged for more than forty years, this Court has not heretofore been called upon for an interpretation. In 1952, the Honorable T. C. Callison, Attorney General for South Carolina, issued his opinion to the Board of Chiropractic Examiners, in which he said:

"It is clear from the statutory definition set forth above [now § 56-351] that the chiropractor is limited under the law to 'palpation and adjustment . . . by hand only'. There is nothing in the statute which authorizes the use of any instruments either for diagnostic or for curative purposes."

In 1960, the Honorable Daniel R. McLeod, Attorney General, issued his opinion to the Board of Chiropractic Examiners, in which he said:

"Accordingly, the practice of chiropractic is limited to the definition set forth in Section 56-351, Code of Laws, 1952, which restricts such practice to treatment 'by hand only'.

. . . . .

"Under the precise definition of chiropractic as set forth in the statutes of South Carolina, it is the opinion of this office that chiropractors are restricted to treatment of ail-

ments of the human body to the use of hands only, and that therapeutic methods such as diathermy, ultrasonic devices and colonic irrigations are outside the scope of chiropractic and the use of such is, therefore, in violation of law."

These opinions, submitted to the Board, have remained unchallenged until this proceeding.

After the pleadings were made up, the defendants, under our discovery proceedings, required each of the fifty-eight plaintiffs to indicate which of ninety separate enumerated pieces of equipment he used in his practice of chiropractic. Each of the plaintiffs responded, admitting the use of anywhere from four to some thirty or forty items of equipment. All of these items will not be enumerated, but for an overall understanding of that which is involved, we recite that they included such items as: Spinalator, Diathermy, Ultrasound, Neurothermograph, X-ray, Hemoglobinometer, Otoscope, Petechiometer, Goinometer, Dynamometer, Urinalysis, Back supports, Heel lifts, Diet, Vitamins, Hydrocollator and Activator.

In the court below it was stipulated that the individual chiropractor's qualifications and competence to use the equipment involved is not an issue, it being the position of the Attorney General that the use of the equipment is illegal and that competence is of no relevancy. It was also stipulated that, for the purpose of these proceedings, the Attorney General would not attempt to prove that the use of the equipment endangers the public health or that it is hazardous and/or not beneficial. Inasmuch as there is involved solely an interpretation of the statute, the stipulations are of no probative value. Presumably those who practice chiropractic in this State have been examined by the Board and certified as qualified to practice "by hand only."

Counsel for the respondents urge this Court to interpret the statute so as to permit chiropractors to operate within the recognized scope of their profession. The argument over-

looks the fact that the legislature determines the scope of the profession. Respondents urge that to interpret the statute as the Board and the Attorney General request would, as a practical matter, abolish the chiropractic profession and render the chiropractic statute a nullity. The legislature has this power.

The argument of counsel for the respondents has substantial appeal. The brief sets forth good reasons for the legislature to review the law as relates to chiropractors, but this Court is not a forum for a rewriting of the law. We think that the plaintiffs in this action have yielded to the temptation to seek a change in the law by interpretation rather than by legislative amendment.

The Plain Meaning Rule defies application of rules of statutory interpretation. It is clear that the scope of chiropractic is limited under the law to "palpation and adjustment . . . by hand only." The meaning of these words is clear. The word "palpation" means diagnosis by hand and is defined as "the act of feeling with the hand; the application of the fingers with light pressure to the surface of the body for the purpose of determining the consistence of the parts beneath in physical diagnosis". *Dorland's Illustrated Medical Dictionary*, 23rd Ed.; *Walkenhorst v. Kesler* (S. Ct. Utah), 92 Utah 312, 67 P. (2d) 654 (1937). To "adjust" means "to bring the parts of [a thing] to a true or more effective relative position." *Webster's New Collegiate Dictionary 15* (1974). The word "articulation" is defined as a joint or juncture between bones or cartilages in the skeleton of a vertebrate. *Webster's New Collegiate Dictionary 64* (1974).

The science of "Chiropractic" has been defined as a system of healing that treats disease by manipulation of the spinal column, a system, or the practice of adjusting the joints, especially the spine, by hand, for the curing of disease. The word "Chiropractic" is coined from two Greek words "chi-

ro" and "practicas", signifying something done with the hands.

We are of the opinion that the lower court erred in granting the plaintiffs a summary judgment. The statute does not authorize the use of mechanical means in diagnosis, analysis, treatment, or in the practice of chiropractic, either as an aid to, or preliminary or preparatory to, or complementary of the use of chiropractic other than by the use of hands only.

The respondents have filed seven additional sustaining grounds, framing issues which they discuss under one question phrased as follows:

Would the restrictive interpretation of § 56-351, as contended by the appellants, exceed the state's police power and violate respondents' rights to privacy, due process and equal protection of the laws as guaranteed by the State and United States Constitutions?

Similar questions were raised in the case of *Dantzler v. Callison,* 230 S. C. 75, 94 S. E. (2d) 117 (1956), and in *State v. Barnes, supra,* and decided adversely to the position which respondents now take. Reference is made to these cases for a discussion of the law involved. The additional sustaining grounds are without merit.

The Board is entitled to the relief which it seeks, and the case is remanded to the lower court where it may apply for an appropriate injunction consistent with the views herein expressed.

Reversed And Remanded.