71230. METOYER v. WOODWARD et al.

(338 SE2d 286)

BANKE, Chief Judge.

At issue in this case is whether chiropractors licensed under the laws of this State are authorized to treat soft tissue injuries through the use of such techniques as galvanism and ultrasound diathermy.

The appellant sued to recover for personal injuries she allegedly sustained when an automobile in which she was riding was struck from behind by a vehicle being driven by one of the appellees, Tyrone Woodward. Woodward was alleged to have been acting at the time in the service of the other two appellees, Rapid Group, Inc., and Taxi Cab Management, Inc., d/b/a London Taxi, both of whom were joined with him as defendants. Also served as a defendant, as an alleged uninsured motorist carrier, was Allstate Insurance Company; however, that company was later voluntarily dismissed from the action, without prejudice.

The three appellees asserted in their answers that they were exempt from liability because the appellant had not suffered a "serious injury" within the contemplation of the Georgia Motor Vehicle Acci-

dent Reparations Act, OCGA § 33-34-1 et seq. The appellant subsequently moved for a pre-trial conference to obtain a ruling on whether certain expenses she had incurred for chiropractic treatment were admissible to establish that she had "reasonably incurred medical expenses exceeding $500.00" within the meaning of OCGA § 33-34-2 (13), so as to enable her to cross the "serious injury" threshold established by OCGA § 33-34-9 (a). Specifically, she asserted that although she had incurred chiropractic expenses in the total amount of $800, certain of these charges were for modalities of treatment determined by the Attorney General of Georgia, in an official opinion to the Joint Secretary of the State Examining Boards dated August 10, 1984, to be beyond the scope of practice of chiropractors licensed in this state. The appellant further asserted that if the charges for these modalities were eliminated, she would be unable to establish medical expenses in excess of $500 and consequently would be precluded from maintaining the present action. See OCGA § 33-34-9 (a), supra.

The "modalities" of treatment at issue are those of galvanism and ultrasound diathermy. Galvanism was described by the appellant's chiropractor as "electrical muscle stimulation," the purpose of which was to "create a sedative type effect by stimulating the endorphins, which is a natural type morphine stimulated by the brain cells within the body, and to aid as a reduction in pain or pain control as well as creating a chemical change in the tissues to promote healing and, again, to reduce muscle spasm." Ultrasound was described by the chiropractor as a form of diathermy which produced a "deep vibratory heat" within the muscle tissue, the purpose of which was to increase the flow of blood to such tissues and thereby reduce muscle spasms.

Based on the opinion of the Attorney General, the trial court ruled that these modalities of treatment were "beyond the scope of permissible practice of chiropractors licensed under the laws of the State of Georgia" and that the charges for such treatment were therefore not admissible to establish a "serious injury" under the no-fault statute. Based on a stipulation by the parties that the exclusion of these charges would foreclose the appellant's claim, the court consequently dismissed the complaint. This appeal followed. *Held*:

As defined by OCGA § 43-9-1 (formerly Code § 84-501), " '[c]hiropractic' means the adjustment of the articulation[1] of the human body, including ilium, sacrum, and coccyx, and the use of electric X-ray photography, provided that the X-ray shall not be used for therapeutical purposes." This definition has existed unchanged since

---

[1] The term "articulation" has been defined as "a joint or juncture between bones or cartilages in the skeleton of a vertebrate." See *Bauer v. State*, 227 SE2d 195, 199 (S.C. 1976), citing Webster's New Collegiate Dictionary (1974).

its original enactment by Ga. L. 1921, pp. 166, 167. The following language was, however, added to the statute in 1977: "The term 'chiropractic' shall also mean that separate and distinct branch of the healing arts whose science and art utilize the inherent recuperative powers of the body and the relationship between the musculoskeletal structures and functions of the body, particularly of the spinal column and the nervous system, in the restoration and maintenance of health. Chiropractic is a learned profession which teaches that the relationship between structure and function in the human body is a significant health factor and that such relationships between the spinal column and the nervous system are most significant, since the normal transmission and expression of nerve energy are essential to the restoration and maintenance of health. However, the term 'chiropractic' shall not include the use of drugs or surgery." Ga. L. 1977, p. 232. See OCGA § 43-9-1 (2), supra.

The authorized scope of practice of chiropractors is further delineated by OCGA § 43-9-16 (formerly Code § 84-509), which provides in pertinent part, as follows: "(a) Chiropractors who have complied with this chapter shall have the right to adjust patients according to specific chiropractic methods."

In his opinion to the Joint Secretary of the State Examining Boards dated August 10, 1984, the Attorney General concluded that "the legislative determination that chiropractic is a learned profession neither expanded the scope of practice beyond the [existing] statutory authorization to *adjust* the articulation of the human body according to specific chiropractic methods nor vested the [Georgia Board of Chiropractic Examiners] with the authority to do so." (Emphasis in original.) Opinions of the Attorney General, 1984 at p. 116. The Attorney General concluded that the use of ultrasound, microwave diathermy, and electrical muscle stimulation were not permitted by the statute in that, while such procedures "are adjunctive to the chiropractic adjustment and are used before and after the chiropractic adjustment[,] [n]one of these therapies are utilized to make an adjustment . . ." Id. at 117. We note that the latter finding is fully consistent with the testimony of the appellant's chiropractor in this case to the effect that he had used ultrasound and galvanism therapies on the appellant for the purpose of treating "the soft tissue problem," preliminary to undertaking any chiropractic manipulation or adjustment.

The Attorney General's conclusion that the authorization to perform chiropractic adjustments contained in OCGA §§ 43-9-1 and 43-9-16 implies no concomitant right to treat muscle injuries through the use of ultrasound diathermy or electrical muscle stimulation techniques is supported by court holdings in other jurisdictions governed by similar statutory definitions of chiropractic. See, e.g., *Norville v.*

*Miss. State Med. Assn.*, 364 S2d 1084 (Miss. 1978) (wherein it was held that chiropractors were not authorized to employ such techniques even though the term "chiropractic" was defined by statute to include the use of procedures preparatory to and complementary of spinal adjustment). See generally Annot.: Scope of Practice of Chiropractic, 16 ALR4th, § 5 (b), pp. 76-80. We reject the appellant's contention that this court's decision in *Caldwell v. Knight*, 92 Ga. App. 747 (1) (89 SE2d 900) (1955), constitutes authority for a contrary holding. There, it was held that the Georgia statute does not prohibit chiropractors from using mechanical traction tables to assist in performing adjustments. The present case does not involve the use of a mechanical device to facilitate the performance of a chiropractic adjustment but rather the introduction of electrical current and high frequency energy waves into the body to treat muscle injuries preparatory to a chiropractic adjustment. The purpose of the electro-muscle stimulation technique was in fact, according to the chiropractor, to create a "chemical change" in the tissues. We hold that such practices are not within the contemplation of the current statutes governing the practice of chiropractic in this state, and we accordingly affirm the judgment of the trial court.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 13, 1985.

*C. Lawrence Jewett, Jr.*, for appellant.
*Robert C. Semler, Sidney L. Moore, Jr.*, for appellees.