47048. WILLS v. COMPOSITE STATE BOARD OF MEDICAL
EXAMINERS et al.
(384 SE2d 636)

SMITH, Justice.

Appellant Charles Edward Wills, Jr. is a physician licensed in Georgia. Following an investigation, the Composite State Board of Medical Examiners (the Board) brought formal charges against him.

---

Prior to the scheduled hearing, the appellant made several motions, including a motion to dismiss on the grounds that the action was barred by laches and the statute of limitation and a motion requesting that the Board be required to produce certain "information necessary to receive a fair hearing." The Board voluntarily provided some information, but it objected to furnishing other information.[1]

Because of the Board's partial refusal, the appellant requested and obtained a pre-hearing conference at which all of his motions were denied. The appellant then sought judicial review of the agency decision by the Superior Court, but he was unsuccessful. The trial court order stated that the appellant had "failed to exhaust administrative remedies" and that there was "no basis for reversing the hearing officer's pre-hearing procedural order." We granted the appellant's interlocutory application, and we affirm in part and reverse in part.

1. The appellant argues that the trial court erred in finding that he had "failed to exhaust administrative remedies and ha[d] not been aggrieved by a final decision of the agency. . . ." Order of the Fulton County Superior Court, R. at 90.

Judicial review of the hearing officer's preliminary procedural ruling is appropriate. "A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." OCGA § 50-13-19 (a). A review of the final agency decision on the merits would not provide an adequate remedy for the appellant. His contention is that he cannot adequately *prepare* his defense because of the Board's refusal to provide the requested information prior to the hearing. Irreparable injury could result without a resolution of these issues prior to the final hearing on the merits. Furthermore, judicial economy requires the issues to be determined prior to a final determination. Otherwise, if the decision of the hearing officer is overruled on appeal, then the case will have to be heard a second time. The General Assembly anticipated circumstances such as these when it enacted OCGA § 50-13-19 (a). We reverse that part of the trial court's decision holding that the appellant had not exhausted his administrative remedies.

2. The appellant contends that the trial court erred in upholding

---

[1] The Board objected to the following: appellant's requests for records and written results of the investigation conducted by the Board; all investigative reports, witness statements, correspondence, and any other document, material, audiotape or videotape which contains information which might be exculpatory or favorable to appellant; correspondence or documents in the Board's possession which requested or urged the Board to investigate or bring charges against appellant; and names and addresses of the person(s) who made the complaint or accusation against appellant which resulted in the investigation and prosecution of appellant by the Board.

the hearing officer's denial of his motions to dismiss based on the doctrine of laches and the statute of limitation.

The trial court did not err. The appellant did not show that any delay in filing charges by the Board was "such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy. . . ." *C & S Nat. Bank v. Ellis*, 171 Ga. 717, 733 (156 SE 603) (1930). Even if the doctrine of laches does apply in administrative proceedings, which we need not decide today, it does not apply in this case. Additionally, the appellant has not cited any authority to support his argument that the medical malpractice statute of limitation applies to this administrative proceeding. For the foregoing reasons we affirm the trial court's ruling on these issues.

3. The appellant argues that the trial judge erred in refusing to allow him to examine portions of the Board's investigative files that may contain exculpatory information in order to prepare for the hearing.

### Gravity of this Appeal

It is important to understand the gravity of the situation the appellant faces. The Board has the power to revoke the appellant's license. Without his license he will lose his practice, and without his practice he will lose his livelihood. The possible deprivation of the appellant's license/livelihood requires constitutional analysis.

[T]he Due Process Clause of the Fourteenth Amendment requires the state to afford any person due process before depriving him of his property as well as his life or liberty; since *a license to engage in a profession is a property right. . . .* [Emphasis supplied.]

*Ga. Real Estate Comm. v. Horne*, 141 Ga. App. 226, 231 (233 SE2d 16) (1977). While a due process analysis is not required prior to the filing of formal charges, *Gilmore v. Composite State Bd. of Medical Examiners*, 243 Ga. 415 (254 SE2d 365) (1979), it must apply after formal charges are filed. "Next to the loss of freedom comes the loss of one's means of a livelihood." *Schaffer v. State Bd. of Veterinary Medicine*, 143 Ga. App. 68, 72 (237 SE2d 510) (1977).

### Statutory Analysis

We do not agree with the Board that OCGA §§ 43-1-19 (h) (2); 43-34-37 (d),[2] and this Court's holding in *Morton v. Skrine*, 242 Ga.

---

[2] OCGA § 43-1-19 (h) (2), which deals with the general powers of the joint secretary of

844 (252 SE2d 408) (1979), require us to uphold the trial court's decision. The statutes prohibit release of any part of the investigative file, but only where the file is sought "for any purpose other than a hearing before the board." Here appellant is seeking portions of the Board's file for the express purpose of preparing for a hearing before the Board; therefore, release of the file is not prohibited under the statutes.

Neither is this case controlled by *Morton*, supra. Dr. Morton, by virtue of his being a member of the board, had access to all of the information in his file before the Board for eight months. After the investigation had terminated and he was exonerated on all charges, he sought access to the information for a second time to assist him in his subsequent libel action. In attempting to circumvent the prohibitions against disclosure contained in the statutes, Dr. Morton urged an interpretation of "hearing before the board" which would have included "the kind of public debate which flows from media publicity of an issue. . . ." *Morton*, supra at 848. Rejecting this or any exception to the confidentiality requirements of the statute, we held that OCGA § 43-34-37 (d) "flatly prohibits release of the entire investigative file," *Morton*, supra at 847, and that "[o]ur statute expressly prohibits disclosure, without exceptions." *Morton*, supra at 849. However, the purpose for which Dr. Morton sought access to the file was not a "hearing before the board," OCGA §§ 43-1-19 (h) (2) and 43-34-37 (d); rather, he sought access to the file for use in his collateral civil action, a purpose "other than a hearing before the board." See also *Rogers v. Composite State Bd. of Medical Examiners*, 245 Ga. 364 (265 SE2d 1) (1980), in which we denied another physician access to his file for a purpose "other than a hearing before the board." The statutes and *Morton* plainly prohibit access for any purpose "other than a hearing before the board," so the denial of access in such situations is proper. However, the case at hand is distinguishable since Dr. Wills is only seeking access *for* a "hearing before the board," a purpose for which the statutes clearly allow access to the file by the licensee.

---

the state examining boards to make investigations of licensees, states in pertinent part:
> The results of all investigations initiated by the boards shall be reported solely to the board, and the records of such investigations shall be kept for the board by the joint-secretary, with the board retaining the right to have access at any time to such records. No part of any such records shall be released, except to the board, for any purpose *other than a hearing before the board.* . . . [Emphasis supplied.]

OCGA § 43-1-19 (h) (2). OCGA §43-34-37 (d), which addresses the specific powers of the joint-secretary to make investigations of physicians, states in pertinent part:
> The results of any investigations whatsoever shall be reported only to the board, and the records of such investigations shall be kept by the board; no part of any such record shall be released for any purpose *other than a hearing before the board.* . . . [Emphasis supplied.]

OCGA § 43-34-37 (d).

## Constitutional Analysis

Notwithstanding the foregoing statutory analysis, we need not decide this case based on statutory interpretation. According to the Georgia Constitution, the paramount duty of government is the protection of people and property. Art. I, Sec. I, Par. II, 1983 Georgia Constitution. Our duty is to uphold the United States Constitution, the Georgia Constitution, and the laws of this state. In so doing, we must always be aware of the hierarchy of the laws. The constitutions must be accorded deference over the statutory laws, and, in case of conflict, the statutory laws must yield to the greater weight of constitutions. A licensee facing the possibility of the loss of a license/livelihood must, upon proper request, be allowed access to information held by the Board that is exculpatory in order for the application of the statutes, OGCA §§ 43-1-19 (h) (2) and 43-34-37 (d), to reach a constitutional result.

If a licensee makes a general or specific request for exculpatory, favorable, or arguably favorable information which is relative to the formal complaint, then the Board must furnish the information requested in the same manner as prescribed by *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).[3] Furthermore, once the Board has either voluntarily furnished such information[4] or has responded to the licensee's motion by furnishing the information or by refusing to do so, then the licensee may request an *in camera* inspection of the remainder of the file.[5] The hearing officer shall furnish the movant with all material that would aid in the movant's defense that is exculpatory, favorable, or arguably favorable.[6] The hearing officer

---

[3] "In Georgia, medical license revocations are 'in the nature of criminal proceedings.'" *Wall v. American Optometric Assn.*, 379 FSupp. 175, 184 (N.D. Ga. 1974), aff'd, 419 U. S. 888 (95 SC 166, 42 LE2d 134) (1974), quoting *Geiger v. Jenkins*, 316 FSupp. 370 (N.D. Ga. 1970), aff'd, 401 U. S. 985 (91 SC 1236, 28 LE2d 525) (1971). We see no reason why the constitutional protections offered in criminal cases should not apply equally to proceedings involving the potential loss of a professional license. See *Wegmann v. Dept. of Registration &c.*, 61 Ill.App.3d 352 (377 NE2d 1297) (1978); see also *McCabe v. Dept. of Registration &c.*, 90 Ill.App.3d 1123 (413 NE2d 1353) (1980) ("In an administrative proceeding, an agency is required to disclose evidence in its possession which might be helpful to an accused.").

[4] "There are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." *United States v. Agurs*, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976).

[5] At the pre-hearing conference on August 25, 1988, the Assistant Attorney General representing the Board stated, "[O]f course, we're happy to let the hearing officer review this in camera, if necessary." (R. at 71.)

[6] The Rules of the Joint Secretary, State Examining Boards, contain a provision which authorizes a similar procedure: "The hearing officer, upon his or her own motion or upon the request of either party, may schedule a pre-hearing conference to hear and rule on motions or other preliminary matters, or otherwise facilitate adjudication of the case." Rule 295-5-.04 (4) (1989). While we do not rely on this rule in setting forth the procedures to be used in these cases, we do point out that such procedures should not be heard to be unduly burdensome on

shall seal the entire investigative file in order to preserve it in the event of an appeal. *Wilson v. State*, 246 Ga. 62 (268 SE2d 895) (1980). For the above reasons we reverse the trial court's affirmance of the hearing officer's denial of the appellant's motion seeking exculpatory information.

4. The appellant argues that the trial court erred in upholding the hearing officer's denial of the right to discover the name of the person or persons who lodged the charges against him.

If the Board denied the name of the complainant to the appellant simply because that information is part of the investigative file, then the denial is error for the reasons set out above.

Any claim by the Board that it[7] may assert an "informer's privilege" is subject to the requirements of *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957).[8]

> A . . . limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Roviaro*, supra at 60. If the identity of the complainant in this case could be viewed as exculpatory, favorable, or arguably favorable to the appellant's defense, then it must be disclosed. Therefore we reverse the trial court's affirmance of the hearing officer's denial of the appellant's motion seeking the identity of the complainant.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED OCTOBER 19, 1989 —
RECONSIDERATION DENIED NOVEMBER 9, 1989.

*Blasingame, Burch, Garrard & Bryant, Gary B. Blasingame, James B. Matthews III,* for appellant.

*Michael J. Bowers, Attorney General, Ray O. Lerer, Assistant*

---

the Board since it has chosen to adopt a similar procedure on its own.

[7] As the United States Supreme Court remarked in *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957), "the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations. . . ." *Roviaro*, supra at 59.

[8] "The *Roviaro* balance should be struck in each case, civil and criminal, in deciding whether disclosure 'is essential to a fair determination of a cause.'" *Westinghouse Electric Corp. v. City of Burlington*, 351 F2d 762 (D.C. Cir. 1965).