A97A1338. SIEGRIST v. IWUAGWA.
(494 SE2d 180)

BLACKBURN, Judge.

Dr. Harry E. Siegrist III appeals from the trial court's grant of summary judgment in favor of Augustine Iwuagwa in Siegrist's suit to collect payment for the rendering of services which were outside the scope of chiropractic treatment. Siegrist, a chiropractor, claims he is entitled to payment from Iwuagwa, a former patient, for massages which are not authorized chiropractic treatment under OCGA § 43-9-16. Siegrist provided the massages to Iwuagwa while treating him for soft tissue injuries sustained in an automobile accident. Because OCGA § 43-9-16 limits the authorized treatments which chiropractors may provide to those modalities listed therein, and because massage is not listed as an authorized treatment modality under the statute, Siegrist is not entitled to recover for the massages.

The facts show that after he was injured in an automobile accident, Iwuagwa presented himself at Siegrist's office, a health care provider, for treatment of his injuries. According to the patient information form he completed prior to seeing Siegrist, Iwuagwa sought "lasting correction" of the soft-tissue injuries he had sustained in the collision. As a condition of receiving this treatment, he was required to sign, on "Chiropractic Health Clinic" letterhead, a statement guaranteeing payment to Siegrist for all charges incurred. The form made

no reference to massages, the fact that services outside the statutory limits for chiropractic treatment might be given, or any indication of the charge for any treatment.

The record does not reflect that Siegrist and Iwuagwa had any discussion or negotiation regarding what specific services Siegrist would provide to Iwuagwa, including what types of treatments Siegrist would administer to Iwuagwa. Nor does the record reflect that the parties ever discussed Siegrist's provision of massages as part of Iwuagwa's chiropractic rehabilitation. However, the record does indicate that on 18 of Iwuagwa's visits to Siegrist's office for treatment, Siegrist chose to administer massage as part of that treatment at a rate of $22 per massage. Based upon the record before us, throughout Iwuagwa's treatment with Siegrist, Siegrist selected all of the treatments, including massage, which, in his professional chiropractic judgment, he felt were beneficial to Iwuagwa.

Iwuagwa had insurance which covered the injuries he received in the collision, and this insurance paid the majority of the cost of his treatments with Siegrist. However, when Iwuagwa's insurer refused to pay for the massages, claiming they were outside the scope of authorized chiropractic treatment, Iwuagwa also refused to pay for the massages, presumably on the same basis. Siegrist thereafter filed suit in magistrate court, and Iwuagwa prevailed. When Siegrist appealed this decision de novo to the state court, both parties moved for summary judgment. Iwuagwa's motion for summary judgment was granted, and it is from this ruling that Siegrist appeals.

Our standard of review for this contention is well-established. "On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. In order to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." (Citation and punctuation omitted.) *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996).

1. Siegrist argues that the trial court erred in finding that, because massage is not listed in OCGA § 43-9-1 et seq. as a permissible practice for chiropractors, Siegrist was not authorized to perform such service as chiropractic treatment and to charge Iwuagwa for it. Specifically, the trial court found that the chiropractic profession is strictly regulated in Georgia, that the permissible chiropractic procedures are clearly set forth by statute, and that massage is not included in the procedures listed in the statute. Siegrist acknowledges the scope of the chiropractic statutes. He argues however that as anyone can perform massage, his status as a chiropractor should

not prevent him from being able to perform massages.

Because the statutes applicable to chiropractors and the practice of chiropractic hold otherwise, Siegrist's argument is without merit. OCGA § 43-9-1 (2) defines "chiropractic" as "the adjustment of the articulation of the human body. . . . [T]hat separate and distinct branch of the healing arts whose science and art utilize the inherent recuperative powers of the body and the relationship between the musculoskeletal structures and functions of the body . . . in the restoration and maintenance of health." OCGA § 43-9-16 further defines the practice of chiropractic, and sets forth the procedures which chiropractors may and may not utilize in treating patients. It is primarily this section which defeats Siegrist's argument.

Pursuant to OCGA § 43-9-16 (e), chiropractors may not prescribe or administer medicine, perform surgery, or practice obstetrics or osteopathy. Nor may they use invasive procedures such as venipuncture, capillary puncture, acupuncture, and colonics. OCGA § 43-9-16 (f). OCGA § 43-9-16 also contains a detailed list of what specific treatment modalities chiropractors are entitled to use. In addition to manual, electrical, and mechanical adjustments of the human body, chiropractors may utilize the following electrical therapeutic modalities: therapeutic ultrasound, galvanism, microwave, diathermy, and electromuscular stimulation. OCGA § 43-9-16 (b). Massage, which would be a treatment modality, is not included in this list, and it does not appear, either specifically or by implication, anywhere else in the chapter on chiropractic. Because the statutes which govern his profession do not provide that he may administer massages as part of a patient's chiropractic treatment, it is clear that Siegrist was not authorized, in his chiropractic treatment of Iwuagwa, to provide massages and then charge Iwuagwa for them.

Statutory construction of this sort is so frequently relied upon by this Court and the Supreme Court that its soundness is above question. "The omission of any reference to [massage] from OCGA § [43-9-16] . . . invites the application of the venerable principle of statutory construction *expressio unius est exclusio alterius*: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, *expressum facit cessare tacitum*, which means that if some things of many are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned. The omission of any such reference from OCGA § [43-9-16] must be regarded as deliberate." (Citations and punctuation omitted.) *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (456 SE2d 642) (1995). Accordingly, under the current statutory scheme, chiropractors may not, as a part of their chiropractic services, treat patients with massages for a fee. See also *Metoyer v. Woodward*, 176 Ga. App. 826 (338 SE2d

286) (1985) (finding that OCGA § 43-9-16, as it existed in 1985, did not permit chiropractors to use the techniques of galvanism and ultrasound diathermy).

The dissent argues that OCGA § 43-9-16, which states that "chiropractic adjustment of the articulations of the human body may include manual adjustments," is broad enough to encompass the giving of massages. However, this issue was not raised in the pleadings in the trial court or on appeal by Siegrist. There is no transcript showing that Siegrist raised this argument in the trial court, as required to preserve it for appellate review. Inasmuch as "[w]e will not consider the validity of a trial court's ruling based on a completely different legal issue than timely and specifically raised below," Siegrist would be barred from asserting such an argument on appeal. *Saffar v. Chrysler First Business Credit Corp.*, 215 Ga. App. 239, 240 (1) (450 SE2d 267) (1994).

While the dissent correctly cites OCGA § 43-9-16 (b) for the proposition that "[t]he chiropractic adjustment of the articulations of the human body may include manual adjustments," the statute's use of the term "manual adjustments" is not broad enough to encompass massages. As used in the statute, "manual adjustments" refer to a method for adjusting the *"articulations"* of the human body. Stedman's Medical Dictionary, 23rd edition, states that "articulations" are joints — "the place of union, usually more or less movable, between two or more bones." "Chiropractic adjustment of articulations," including "manual adjustments," therefore means manipulations of the joints of the human body. Massage, by contrast, does not involve manipulations of the joints of the human body. In fact, Siegrist himself defines massage as "a body rub given to improve circulation and relax muscles." Accordingly, as manual adjustments of articulations refers to joints, and as massage is not a "manual adjustment" of joints, OCGA § 43-9-16 (b) provides no support for the dissent even if the issue had been preserved and was properly before us.

A review of prior chiropractic cases supports our conclusion that massages are not statutorily authorized chiropractic treatment. Foremost among these is *Foster v. Ga. Bd. of Chiropractic Examiners*, 257 Ga. 409 (359 SE2d 877) (1987), wherein the Supreme Court examined the dispensing of nutritional substances by a chiropractor, Foster, to his patients. The state claimed that Foster was prescribing drugs, which constituted the unlicensed practice of medicine. Foster argued that anyone could sell the nutritional substances at issue, including common merchants, and therefore he should also be able to prescribe and dispense the substances. Id. at 418 (12).

The Supreme Court rejected this reasoning, and found that "[t]he regulation of health professions, for the preservation and protection of public health, is universally regarded as a duty of the State

in the exercise of inherent police power." (Punctuation omitted.) Id. at 419 (14). It noted that the chiropractor did not merely sell vitamins, he "[represented] to a patient who [had] come to him that such vitamins [would] cure a disease or ailment. . . . [T]he chiropractor in a professional capacity advises the patient to take the vitamins for the ailment or disease, charges compensation for such advice, and may cause the patient to think his ailment or disease will thereby be cured. This is the vice condemned." (Punctuation omitted.) Id. at 418-419.

The same reasoning applies here. The legislature has chosen to regulate chiropractic closely, and has clearly delineated the bounds over which chiropractors may not cross. Unlike a chiropractor, one who gives massages for relaxation or similar purposes does not represent to a patient, for a fee, that massage will cure a disease or ailment. Although anyone may give massages, when a chiropractor gives a massage as part of his rehabilitation or maintenance of a patient's health, he is representing, based upon his professional judgment, that the massage has medical, rehabilitative benefits. The character of the massage is therefore transformed when it is administered by a chiropractor — from an act anybody can perform to a professionally diagnosed and administered chiropractic procedure which the patient believes will alleviate his pain or cure his disease.

As was the case in *Foster*, which is binding authority upon us, herein lies the difference between simply providing massages and in providing them as part of a patient's chiropractic treatment. Although, unlike *Foster*, Siegrist's giving of massages does not amount to the unlicensed practice of medicine, the vice condemned is the same. In the same way that Foster unlawfully represented that certain vitamins would assist or cure various conditions in his patients, Siegrist — unlawfully under the statute — represented that massage had chiropractic benefits and administered massages as part of chiropractic treatment to heal and cure. Although massage may indeed have some benefit, that issue is not before us, and only the legislature has the authority to address this issue.

History shows us that this pattern is a common one in Georgia jurisprudence where the scope of the chiropractic statutes is at issue. For example, after the Supreme Court held in *Foster* that the Code did not authorize Foster to "prescribe or dispense vitamins, minerals, or nutritional substances," *Foster*, supra at 417 (10), the Georgia legislature amended OCGA § 43-9-16 to provide that chiropractors "may recommend the use of vitamins, minerals, or food supplements." OCGA § 43-9-16 (i). Similarly, after this Court held in *Metoyer v. Woodward*, supra, that OCGA §§ 43-9-1 and 43-9-16 did not permit chiropractors to use the treatment modalities of galvanism and ultrasound diathermy, the Code was amended to add these modalities to

the permissible scope of chiropractic treatment. See OCGA § 43-9-16 (b). *Foster* and *Metoyer* illustrate that it is the duty of this Court and the Supreme Court to apply the chiropractic statutes as written, and the option of altering or amending the statute rests exclusively with the legislature.

To claim, as Siegrist does, that because anyone can perform massages with little more than a business license, his ability to give massages should not be proscribed, misses the point of the reasoning behind regulating the profession of chiropractic. If chiropractors could perform all services any other person, medical or otherwise, could perform, there would be no need for a statute setting forth those specific treatment modalities which chiropractors are authorized to use to treat or rehabilitate a patient. Siegrist is not barred from giving massages, he is simply not authorized to provide them as chiropractic treatment and then charge for them. The reason for this rule is basic. Chiropractors are limited to providing, and charging for, certain services which are within the scope of their profession. A chiropractor cannot, pursuant to an agreement to pay for services like the one Iwuagwa was required to sign here, perform services which are not authorized as chiropractic treatment and then force a patient to pay for those services by virtue of the agreement to pay.

A chiropractor may provide massage services if he chooses, so long as such massages are not provided in his capacity as a chiropractor rendering chiropractic treatment to a chiropractic patient. In no event could a patient's guarantee to pay for chiropractic services include the guarantee to pay for any type of non-chiropractic service, including massage. The absence of massage from the current statutory scheme evinces the legislature's determination that massage is not a proper form of chiropractic treatment at this time. Accordingly, the trial court did not err in granting summary judgment for Iwuagwa on this issue.

2. Siegrist claims the trial court should have enforced the executed contract for which Iwuagwa received full benefit. As held in Division 1, however, the massages were not authorized by law as chiropractic treatment. Pursuant to OCGA § 13-8-1, "[a] contract to do an immoral or illegal thing is void." The parties' contract for massages was therefore void, and the trial court did not err in failing to enforce it. Siegrist having been paid for the rest of his chiropractic services to Iwuagwa, this issue presents nothing further for review. See OCGA § 13-8-1 (regarding the severability of contracts).[1]

---

[1] Siegrist also suggests that he is entitled to equitable relief so that Iwuagwa will not be unjustly enriched. Though we need not address this argument for Siegrist's failure to separately enumerate it, "where a contract is illegal only in part, recovery is allowed on a quantum meruit basis for the part of the services *which was legal*." (Emphasis supplied.)

3. Siegrist raises several constitutional arguments, and claims the trial court erred in failing to address them. He contends that his due process and equal protection rights will be violated if chiropractors are prohibited from practicing massage. He also claims that barring chiropractors from offering massages unconstitutionally impairs his contract with Iwuagwa. While the trial court's order does not specifically address these arguments, it implicitly finds them to be without merit. Also, Siegrist's "contract" with Iwuagwa was nothing more than a general guarantee to pay for chiropractic services. Massages not being chiropractic services, there was no guarantee to pay for such services.

(a) Siegrist argues that chiropractors have a fundamental right to practice massage, and that denial of that right is a violation of equal protection. However, the right to practice massage is not a fundamental right.[2] As Siegrist does not contend that chiropractors are a suspect class, we must therefore determine under the "rational basis" test whether or not the state's regulation of chiropractors performing massage "bears a reasonable relationship to a legitimate purpose of government. . . . If it is found that the legislative purpose is legitimate and the classification drawn has some reasonable relation to furthering that purpose, the classification passes constitutional muster." (Punctuation omitted.) *City of Atlanta v. Watson*, 267 Ga. 185, 187-188 (475 SE2d 896) (1996).

The state's classification of chiropractors, including its classifications regarding what procedures chiropractors are and are not authorized to use, bears a reasonable relationship to the government's legitimate purpose of protecting the public's health. See generally *Foster*, supra at 419 (14). Preventing chiropractors from prescribing, administering, and charging for massages, in the course of chiropractic treatment, reasonably furthers the state's purpose in protecting public health and welfare from an activity it has determined is beyond the scope of the practice of chiropractic. The same is true of preventing chiropractors from directly or implicitly representing to the public that massage is an authorized chiropractic treatment. For this reason, Siegrist has failed to show that the state's legislation "was undertaken with an unreasonable purpose or was arbitrary and capricious," and he has therefore not shown the existence of an equal protection violation. *Watson*, supra at 187.

(b) Siegrist contends the taking of his ability to perform

---

*Remediation Svcs. v. Ga.-Pacific Corp.*, 209 Ga. App. 427, 434 (433 SE2d 631) (1993).

[2] Fundamental rights include "the guarantees of the Bill of Rights, the right to fairness in the criminal process, the right to privacy, the right to travel, the right to vote, freedom of association, and procedural due process rights." *Ambles v. State*, 259 Ga. 406, 408 (b) (383 SE2d 555) (1989).

massages in connection with his profession amounts to a deprivation of property without due process of law. He correctly asserts that a license to engage in a profession is a property right. See *Wills v. Composite State Bd. of Med. Examiners*, 259 Ga. 549, 551 (3) (384 SE2d 636) (1989). He is also correct that such a property right "requires the state to afford any person [having such right] due process before depriving him of his property." Id. However, the performance of massage services is not an act which falls within the scope of chiropractic practice under existing statutes, and therefore no due process violation exists.

Nothing in the statutes governing chiropractic practice precludes a chiropractor, who is otherwise qualified, from providing separate massage services. Siegrist is simply prohibited from doing so and representing massage as chiropractic services and charging his chiropractic patients for such unauthorized procedure.

(c) Siegrist claims the trial court's ruling impairs his right to contract. "The test is whether there was a vested right. If so, no subsequent legislative Act could impair it; but if not, there is no bar to a change or abolition of it at any time before it becomes fixed by a judgment." (Punctuation omitted.) *Goolsby v. Regents of the Univ. System of Ga.*, 141 Ga. App. 605, 606 (234 SE2d 165) (1977) (rev'd on other grounds, *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 53 (414 SE2d 638) (1992)).

Although Siegrist argues that he should be allowed to perform chiropractic massages and charge for them, he does not argue that he had a vested right to do so. Nor does anything contained in the record so indicate. See generally *S. J. T., Inc. v. Richmond County*, 263 Ga. 267, 271 (6) (430 SE2d 726) (1993). The prohibition therefore does not constitute an impairment of contract, and this enumeration is without merit.

4. We need not reach Siegrist's enumeration that summary judgment should have been granted for him.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Pope, P. J., Beasley and Smith, JJ., concur. Johnson, J., dissents.*

JOHNSON, Judge, dissenting.

OCGA § 43-9-16 (b) states that "chiropractic adjustment of the articulations of the human body may include manual adjustments. . . ." I dissent in this case simply because I believe massage is a form of manual adjustment within the contemplation of the statute. I do not take issue with Judge Blackburn's thorough discussion of the rules of statutory construction or the applicability of those venerable principles to the cases upon which his decision relies, *Metoyer v. Woodward*, 176 Ga. App. 826 (338 SE2d 286) (1985) and *Foster v. Ga. Bd. of Chiropractic Examiners*, 257 Ga. 409 (359 SE2d

877) (1987), both of which I agree were correctly decided but which are distinguishable from this case. And because I believe that massage falls within the purview of the statute, a contract for such services is not unenforceable as an illegal contract as held in Division 2 of the majority's opinion.

DECIDED SEPTEMBER 26, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997 — 

*Suzanne A. Littlefield*, for appellant.
*Downey & Cleveland, Richard A. Griggs*, for appellee.