A04A1804, A04A1805. COLVARD et al. v. MOSLEY;
and vice versa.

(605 SE2d 838)

JOHNSON, Presiding Judge.

Donald Roy Colvard and Linda Colvard sued Khristy Dawn Mosley for damages arising out of an automobile collision, including damages for the expenses of medical care and treatment of injuries to Donald Colvard. After discovery, Mosley filed a motion for partial summary judgment seeking to prohibit the Colvards from recovering certain expenses incurred by Donald Colvard in connection with the treatment of his injuries. Mosley claimed these expenses were incurred for procedures performed or ordered by a chiropractor outside the scope of authorized chiropractic care. In particular, Mosley claims the Colvards could not recover damages attributable to (i) diagnostic ultrasound and nerve conduction studies billed by Dr. Donald F. Riefer, Donald Colvard's chiropractor, in the amount of $1,212 ("Dr. Riefer's charges"), or (ii) certain procedures performed by the Comprehensive Medical Group ("CMG") upon referral by Dr. Riefer, and billed in the amount of $3,080 (the "CMG charges"). In Case No. A04A1804, the Colvards appeal the trial court's grant of partial summary judgment to Mosley as to the CMG charges. In Case No. A04A1805, Mosley appeals the trial court's denial of her motion for partial summary judgment with respect to Dr. Riefer's charges. For the reasons set forth below, we affirm in Case No. A04A1804 and reverse in Case No. A04A1805.

*Case No. A04A1804*

The Colvards contend that the trial court erred in disallowing the CMG charges as part of their claim for recovery because Dr. Riefer, a chiropractor, was authorized to refer Donald Colvard to CMG for the performance of the tests leading to the CMG charges. We disagree.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] Our review is de novo.[2] So viewed, the evidence shows that a CMG technician performed certain tests on Donald Colvard which were interpreted by CMG medical doctors, who in turn reported the results to Dr. Riefer. The tests, which were the source of the CMG charges, consisted of a diagnostic ultrasound spinal sonograph, dermatomal

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] *Pyle v. City of Cedartown*, 240 Ga. App. 445, 446 (524 SE2d 7) (1999).

somatosensory evoked potential — upper extremity, upper dermatomal somatosensory evoked potential, and motor/sensory nerve conduction studies with F-wave and H-reflex studies.

The Colvards show that Dr. Riefer was authorized to refer Donald Colvard to CMG for the administration of diagnostic procedures and evaluation of diagnostic findings under the authority of Ga. Comp. R. & Regs. r. 100-10-.01 (b) (1) ("Rule 100-10-.01 (b) (1)"), which provides

> (b) The doctor of chiropractic has the responsibility as a primary healthcare provider to examine, establish a diagnosis/clinical impression, render treatment and/or referral, commensurate with his/her findings.
> 1. Referral to an appropriate health care provider shall be considered by the Board to mean the direction of a patient to another licensed health care professional or institution for evaluation, consultation or care. Referrals may be made for the purposes of consultation, concurrent care, post-chiropractic care, the administration of diagnostic procedures, the evaluation of diagnostic findings, emergency care or because a clear determination has been, or should have been made on the part of the chiropractor that a patient condition is outside his/her scope of professional experience, training or practice.

The foregoing regulation states that it is "[i]n accordance with OCGA § 43-9-12.1," which statute provides for the authorization and duty of the chiropractor to refer patients to the appropriate health care provider:

> The doctor of chiropractic must bring to the exercise of that person's profession a reasonable degree of care and skill, which shall include the determination of the need for chiropractic care, as defined in paragraph (2) of Code Section 43-9-1, and shall render treatment, referral to the appropriate health care provider, or both treatment and referral commensurate with that chiropractor's findings. Any failure to refer to the appropriate health care provider may subject the doctor of chiropractic to the provisions of Code Section 43-9-12. Nothing in this Code section shall be deemed to expand or limit the chiropractic scope of practice.

Arguably, Rule 100-10-.01 (b) (1) allowed Dr. Riefer to refer Donald Colvard to CMG for the administration of diagnostic tests. And under OCGA § 43-9-12.1, a chiropractor may refer a patient to a

"health care provider" such as CMG. However, OCGA § 43-9-12.1 also provides that "[n]othing in this Code section shall be deemed to expand or limit the chiropractic scope of practice." Accordingly, OCGA § 43-9-12.1 did not authorize Dr. Riefer to exceed the scope of his chiropractic practice in referring Donald Colvard to CMG.

Dr. Riefer's affidavit and Donald Colvard's deposition show that Donald Colvard was never personally examined by any medical doctor before the tests were conducted on Donald Colvard at Dr. Riefer's offices by a CMG technician. There is no indication that Dr. Riefer conferred with a medical doctor about Donald Colvard's treatment before the tests were performed. As Dr. Riefer averred, "I referred Mr. Colvard to [CMG], whose qualified technicians perform certain well-known, recognized and generally accepted diagnostic tests and procedures in my office which are then interpreted by licensed and practicing medical doctors who report the same to me." It is apparent that no CMG doctor authorized the procedures performed on Donald Colvard based on his or her independent medical judgment. Rather, it was Dr. Riefer who exercised his judgment in referring Donald Colvard for the "generally accepted diagnostic tests and procedures" performed by the technician.

The diagnostic tests and procedures performed on Donald Colvard, consisting of diagnostic ultrasound spinal sonograph, dermatomal somatosensory evoked potential — upper extremity, upper dermatomal somatosensory evoked potential, and motor/sensory nerve conduction studies with F-wave and H-reflex studies, are not within the scope of chiropractic practice as defined in OCGA § 43-9-1 (2) and set forth in OCGA § 43-9-16. Chiropractic is defined as

> the adjustment of the articulation of the human body [and] that separate and distinct branch of the healing arts whose science and art utilize the inherent recuperative powers of the body and the relationship between the musculoskeletal structures and functions of the body, particularly of the spinal column and the nervous system, in the restoration and maintenance of health.[3]

OCGA § 43-9-16 sets forth the scope of chiropractic practice, including a list of the specific treatment modalities the chiropractor may employ. "In addition to manual, electrical, and mechanical adjustments of the human body, chiropractors may utilize the following

---

[3] OCGA § 43-9-1 (2).

electrical therapeutic modalities: therapeutic ultrasound, galvanism, microwave, diathermy, and electromuscular stimulation."[4] We have interpreted OCGA § 43-9-16 such that any omission from the list of procedures is considered to be deliberate.[5] The tests performed on Donald Colvard by the CMG technician are not listed in OCGA § 43-9-16 and were therefore not within the scope of Dr. Riefer's chiropractic practice.[6]

Based on the foregoing, we conclude that Dr. Riefer's referral of Donald Colvard to a CMG technician for procedures outside the scope of chiropractic practice, without prior approval by or consultation with a medical doctor, constituted a medical decision outside the scope of Dr. Riefer's chiropractic practice.[7] Accordingly, the referral did not comply with OCGA § 43-9-12.1, which does not allow referrals to expand the chiropractic scope of practice. Rule 100-10-.01 (b) (1) must be interpreted in accordance with OCGA § 43-9-12.1 and cannot stand as authority for Dr. Riefer's referral in this case.[8]

In order for the Colvards to recover damages for the CMG charges, they must show the CMG charges were necessary expenses incurred on account of Donald Colvard's injuries.[9] Because the tests leading to the CMG charges were conducted outside the scope of Dr. Riefer's chiropractic practice, and were not otherwise shown to be performed under authority of any medical provider competent to order the procedures, the Colvards cannot show the CMG charges were necessary for the treatment of Donald Colvard's injuries.[10] It follows that the trial court did not err in granting partial summary judgment to Mosley with respect to the CMG charges.

---

[4] *Siegrist v. Iwuagwu*, 229 Ga. App. 508, 510 (1) (494 SE2d 180) (1997); OCGA § 43-9-16 (b).

[5] See *Foster v. Ga. Bd. of Chiropractic Examiners*, 257 Ga. 409 (359 SE2d 877) (1987) (chiropractor was not allowed to prescribe various nutritional substances as part of patient's treatment under then applicable statutory scheme); *Siegrist*, supra, 229 Ga. App. at 510 (1) (chiropractors may not treat patients with massage for a fee).

[6] The use of diagnostic ultrasound spinal sonograph in the tests performed on Donald Colvard appears to invite the argument that the procedure should be considered within the "therapeutic ultrasound" procedures allowed by OCGA § 43-9-16 (b). The Colvards do not, however, contend that any of the procedures performed by the CMG technician were within the scope of chiropractic practice.

[7] See 1993 Op. Atty. Gen. 93-11 (concluding that referring patients for magnetic resonance imaging is not within the scope of chiropractic practice).

[8] See, e.g., *Dept. of Human Resources v. Anderson*, 218 Ga. App. 528, 529 (462 SE2d 439) (1995) (an administrative rule which exceeds the scope of or is inconsistent with the authority of the statute upon which it is predicated is invalid).

[9] See OCGA § 51-12-7.

[10] See, e.g., *Metoyer v. Woodward*, 176 Ga. App. 826 (338 SE2d 286) (1985) (patient's treatment by "galvanism" not within the then authorized scope of chiropractic practice, and charges for the procedure could not be used to establish medical expenses for purposes of OCGA § 33-34-2).

## Case No. A04A1805

In a cross-appeal, Mosley claims the trial court erred in denying her motion for partial summary judgment as to Dr. Riefer's charges. We agree.

The trial court denied Mosley's motion for partial summary judgment because it found an issue of fact remained as to whether Dr. Riefer's charges were for diagnostic ultrasound and nerve conduction studies or for chiropractic care and treatment. The Colvards argue that an issue of fact is shown by Dr. Riefer's affidavit, in which he avers that he charged Donald Colvard for "chiropractic care and treatment." Mosley, however, points to her first request for admission, in which she asked the Colvards to admit that "6. Donald Riefer, D. C., billed the Plaintiff for nerve conduction studies on June 11, 2002. 7. Donald Riefer, D. C., billed the Plaintiff for diagnostic ultrasound on June 11, 2002. 8. Donald Riefer, D. C., billed the Plaintiff $1,212 for the above June 11, 2002 testing, which the Plaintiff seeks to recover from the Defendant."

Mosley claims the Colvards never responded to the request for admission, and the Colvards do not dispute this assertion. We note that the Colvards also stipulated and agreed to the facts set forth in paragraph 4 of Mosley's statement of material facts as to which there is no genuine issue, which provided, "[a]long with being charged by [CMG] for these tests, the Plaintiff is also seeking to recover $1,212 from Ms. Mosley for nerve conduction studies and diagnostic ultrasound performed by his chiropractor, Dr. Riefer."

Based on the Colvards' admission and stipulation, we can only conclude that Dr. Riefer's charges were on account of nerve conduction studies and diagnostic ultrasound. Dr. Riefer's affidavit cannot be used to contradict this admission.[11] Nerve conduction studies and diagnostic ultrasound are not listed in the treatment modalities authorized by OCGA § 43-9-16, and the Colvards do not argue otherwise. It follows that Dr. Riefer's charges were on account of services beyond the scope of Dr. Riefer's chiropractic practice and, as in the case of the CMG charges considered in Case No. A04A1804, cannot be shown to be necessary expenses attributable to Donald Colvard's injuries. Accordingly, the trial court erred in denying Mosley's motion for partial summary judgment with regard to Dr. Riefer's charges.

*Judgment affirmed in Case No. A04A1804. Judgment reversed in Case No. A04A1805. Smith, C. J., and Phipps, J., concur.*

---

[11] See *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455, 456 (1) (496 SE2d 546) (1998) (trial court erred in allowing evidence that contradicted party's admission).

DECIDED OCTOBER 19, 2004.

*John S. Husser*, for appellants.
*Downey & Cleveland, Sean L. Hynes*, for appellee.